This was a civil action to recover damages for personal injuries to the plaintiff, alleged to have been caused by the wrongful act, neglect and default of the defendants.
The facts necessary to the understanding of the disposition of this case are these: The plaintiff, a young woman 26 years of age, was riding as a guest in an automobile owned and operated by William B. Blades, *Page 464 
on 21 February, 1939, on Chapel Hill Street in the city of Durham. Across Chapel Hill Street is an overpass constructed and maintained by the defendant railway company by and with the consent and approval of the defendant city. In the center of said street there was a row of concrete pillars about 13 1/2 feet high and 18 inches thick to support the tracks of the defendant railway company, which row of pillars extended the entire width of the tracks.
The westernmost pillar is under the western edge or side of the overpass and in the center of Chapel Hill Street. The automobile of William B. Blades, operated by him and in which the plaintiff was riding as a guest, was proceeding east on Chapel Hill Street from the intersection of said street and Duke Street, and ran headlong into said pillar, causing the death of Blades, the driver, and serious and permanent injury to the plaintiff, a guest passenger.
At the close of the evidence, it having been made to appear that the plaintiff, for and in consideration of the payment of $4,500.00, had entered into a covenant not to sue the Blades' estate, the court, by agreement of the plaintiff and defendant administratrix, entered a voluntary nonsuit as to said estate.
The defendant railway company and city both moved the court at the close of the plaintiff's evidence, and renewed their motions at the close of all the evidence, for a judgment as in case of nonsuit. C. S., 567. These motions were denied, and the appealing defendants preserved exceptions.
The jury answered the issues submitted in favor of the plaintiff, and from judgment predicated upon the verdict, the defendants, Southern Railway Company and city of Durham, appealed, assigning errors.
Among other defenses set up by the appealing defendants is the contention that all of the evidence, both of the plaintiff and of the defendants, tends to show that the collision of the automobile in which the plaintiff was riding as a guest with the pillar supporting the railway tracks in the center of Chapel Hill Street was caused by the negligence of the driver of said automobile, which negligence insulated any negligence of the appealing defendants in the construction and maintenance of said pillar, and became the sole proximate cause of the collision and consequent injuries to the plaintiff, and for that reason it *Page 465 
was reversible error to deny the motions lodged by the appealing defendants for judgment as in case of nonsuit under C. S., 567. With this contention we agree.
In our discussion of the case it will be conceded, but it is not decided, that the appealing defendant railway company and city were negligent in the construction and maintenance of the supporting pillar in the center of the street.
In Haney v. Lincolnton, 207 N.C. 282, 176 S.E. 573, which was an action for the alleged wrongful death of the plaintiff's intestate, Sue Gurley, the facts were: The intestate was a guest passenger in an automobile driven by one Guy Barringer. The automobile was being driven on Church Street, approaching Mills Street, in the town of Lincolnton. Church Street intersected but did not cross Mills Street. On the opposite side of Mills Street from where Church Street intersected it there was a declivity some 6 or 10 feet deep. There was no barrier or light to warn a driver that Church Street did not cross Mills Street, or of the declivity opposite the intersection of Church Street. If it be conceded that the defendant town was negligent in failing to erect and maintain a barrier or light at the intersection, and that the driver of the automobile negligently failed to observe the situation and drove the automobile across Mills Street over the declivity, resulting in the death of the guest passenger, we have a case practically "on all fours" with the case at bar. In that case the Court said: "It further appears that the immediate cause of the plaintiff's intestate's unfortunate death was the negligence of Guy Barringer, the driver of the car, and not that of the defendant. This doctrine of insulating the conduct of one, even when it amounts to inactive negligence, by the intervention of the active negligence of a responsible third party, has been applied in a number of cases. Baker v. R. R., 205 N.C. 329,171 S.E. 342; Hinnant v. R. R.,202 N.C. 489, 163 S.E. 555; Herman v. R.R., 197 N.C. 718, 150 S.E. 361."
Baker v. R. R., supra, was an action to recover for the alleged wrongful death of the plaintiff's intestate, who was riding as an invited guest in an automobile driven by one Williams. Williams, the driver, fell asleep and the automobile collided with a concrete pillar standing in the middle of the highway, to support a railroad trestle over the highway underpass. In that case the court, after stating it made no definite ruling as to whether the defendant could be held liable for negligent construction of the underpass in view of its approval by the State Highway Commission, said: "In any event, the negligence of the defendant, if any, was only passive, while that of the driver of the automobile was active, and must be regarded as the sole, proximate cause of the plaintiff's intestate's death. Brigmanv. Construction Co., 192 N.C. 791, 136 S.E. 125." *Page 466 
In the Haney case, supra, we have the passive negligence of the defendant in not constructing and maintaining a barrier or light or warning at the non-crossing intersection conceded. In the Baker case, supra, we have the passive negligence of the defendant in constructing and maintaining a concrete supporting pillar in the center of the highway conceded. In the former case the Court held that the passive negligence of the defendant was insulated by the active negligence of the driver of the automobile in not seeing and observing the situation, and driving across the intersected street and down the declivity on the other side thereof. In the latter case the Court held that the passive negligence of the defendant was insulated by the active negligence of the driver of the automobile in falling asleep and driving the automobile into the pillar.
It is difficult, in truth we have found it impossible, to distinguish the case at bar from the Haney case, supra, and the Baker case, supra. In the case at bar, while it is conceded that the defendant railway company and the defendant city were negligent in the construction and maintenance of the pillar in the center of Chapel Hill Street, still this pillar was static, and the negligence was passive, while the negligence of Blades, the driver of the automobile in which the plaintiff was riding as a guest passenger, in driving the automobile into the pillar was active, but for which the injury to the plaintiff would not have occurred, and therefore insulated the negligence of the defendants, and became the sole proximate cause of the plaintiff's injury.
All of the evidence of both the plaintiff and the defendants tends to establish the negligence of Blades, the driver of the automobile, and that but for his negligence the injury to the plaintiff would not have occurred. The plaintiff herself testified that in her action against the administratrix of Blades she alleged in her complaint that Mr. Blades "carelessly and negligently failed to keep a lookout for said post or obstruction in the street and negligently and carelessly failed to exercise due and proper precaution in the operation of his automobile in that he negligently failed to keep a lookout for and negligently failed to see said obstruction and negligently failed to drive his automobile on the right-hand side of the street at said point."
Also, the plaintiff's witness Herbert Richardson, referring to the automobile driven by Blades, testified: "When I got to the intersection of Chapel Hill Street and Duke Street I stopped for a traffic light. A car pulled up behind me and the light turned to caution just as he pulled up and he didn't have to stop but just passed on by me. He was going eastward. When he passed by me the light come green and I went on following that car. That car went down the hill just straddling the white line and I taken a notice of it. That is the white line in the center *Page 467 
of the street and this car was straddling that white line. It went perfectly straight to my knowing and I was following behind it. It was going about 18 to 20 miles an hour. There is an underpass down there at the end of that block and the street goes under the railroad. There is a cement pillar in the middle of the street. The automobile which had passed me and which I was following just centered that line and ran right into the cement post." And on cross-examination: "I followed this car from Duke Street down until it collided with the pillar at the underpass. Mr. Blades' car went perfectly straight to the best of my knowledge. He started on the white line at Duke Street and kept astride the white line until he hit the underpass. That white line is in the center of Chapel Hill St. Chapel Hill Street is a wide street, something like 40 feet wide, I guess. . . .
"This white line that ran down the center of the street from Duke Street down to the underpass was something like 5 or 6 inches wide, probably 8 inches. The surface of the street is asphalt and this line is a white line on the asphalt. I have been back and forth through the underpass a good many times and am familiar with it. I had seen those reflector buttons on the column before. You come down the street going east on Chapel Hill Street at night and the headlights on your car, if they are burning, will pick up that reflection off the column from those buttons.
"They will pick up the reflection a right good little ways, I think they would pick up the reflection west of Willard Street. This accident happened on Tuesday. The time that I had been through this underpass next before that Tuesday was on Saturday night before. I was going eastward, my lights were burning that night, I saw the reflector signal that night. The lights from my car shone on the reflector signal that night. I didn't pay attention to it until I got pretty close to it. I don't know how far away your headlights would pick up that reflector signal going eastward on Chapel Hill Street."
While there may be evidence tending to show that the reflector signal on the pillar was minus several reflector buttons and was dimmed with dust and dirt and therefore not in the best condition, still no witness testified that the pillar could not readily be seen. In fact, the preponderance of the evidence tends to show it was plainly visible.
In the case of Ballinger v. Thomas and Railway Company, 195 N.C. 517,142 S.E. 761, this Court, in sustaining a demurrer filed by the defendant railway company, said: "The demurrer might be overruled and the judgment upheld but for the allegation against the defendant Thomas, the driver of the automobile in which the plaintiff was riding (set out in paragraph `e' above), to the effect that said defendant, upon observing the oncoming locomotive, carelessly and negligently turned his *Page 468 
automobile off the highway and ran it into a hole so that it turned over and injured the plaintiff. This alleged negligent conduct of the defendant Thomas, it will be observed, took place after he had seen the oncoming locomotive, which necessarily `insulated' the negligence of the appealing defendant, as it was no longer operative or active, and rendered Thomas' negligence the proximate cause of plaintiff's injury. Harton v. Tel. Co.,146 N.C. 430, 59 S.E. 1022. Note, it is not alleged in the complaint that Thomas, the driver of the automobile, ran his machine off the highway to avoid a collision or in an effort to extricate himself and the plaintiff from a position of peril, produced by the negligence of the railroad company, but the allegation is that said defendant carelessly and negligently, i.e., needlessly, drove his car off the highway after he had all the information which bell or whistle signal would have given him, and injured the plaintiff. This necessarily means that the alleged negligence of the railroad company was remote, while that of the defendant Thomas was proximate. Construction Co. v. R. R., 184 N.C. 179, 113 S.E. 672. Hence, upon all the facts alleged by the plaintiff in her complaint, it appears that the negligence charged against the defendant, Southern Railway Company, was not in law the proximate cause of her injury."
NOTE: The allegation in the complaint of the plaintiff in the case at bar in her action against the administratrix of Blades, the driver of the automobile in which she was riding as a guest passenger, was that Blades "negligently failed to see said obstruction and negligently failed to drive his automobile to the right-hand side of the street at this point."
The establishment of the fact that the negligence of the appealing defendants was the proximate cause of the injury to the plaintiff is just as essential to the plaintiff's cause of action as is the establishment of the negligence itself. "`The proximate cause of the event must be understood to be that which in natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which such event would not have occurred. . . . The test by which to determine whether the intervening act of an intelligent agent which has become the efficient cause of an injury shall be considered a new and independent cause, breaking the sequence of events put in motion by the original negligence of the defendant, is whether the intervening act and the resultant injury is one that the author of the primary negligence could have reasonably foreseen and expected.'" Beach v. Patton, 208 N.C. 134, 179 S.E. 446.
To hold that defendant railway company and city owed to the plaintiff the duty to foresee that a driver of an automobile would drive it on a city street for a whole block "just straddling the white line," going "perfectly straight," with nothing to obstruct his view, and centering *Page 469 
the white line and run "right into the cement post" in the middle of the street, when the street was open and clear twenty feet wide to the right of the post, "would not only `practically stretch foresight into omniscience,'Gant v. Gant, 197 N.C. 164, but would, in effect, require the anticipation of `whatsoever shall come to pass.' We apprehend that the legal principles by which individuals are held liable for their negligent acts impose no such far-seeing and all-inclusive duty. The law only requires reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, the party whose conduct is under investigation is not answerable therefor. Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." Beach v. Patton, supra. Ordinarily at least, one party is not required to anticipate and foresee the negligent acts of another party.Hinnant v. R. R., supra.
The doctrine of intervening active negligence of a responsible third party insulating the original passive negligence of another, where the conduct of the other would not have resulted in injury except for the intervening negligence, is discussed in many of our decisions and we think impels the conclusion we have reached in this case. See, in addition to the cases already cited, Butner v. Spease, 217 N.C. 82, 6 S.E.2d 808;Chinnis v. R. R., 219 N.C. 528, 14 S.E.2d 500; Peoples v. Fulk,220 N.C. 635, 18 S.E.2d 147; Reeves v. Staley, 220 N.C. 573,18 S.E.2d 239; Jeffries v. Powell, 221 N.C. 415, 20 S.E.2d 561.
It is contended that the "law of the case" was written when this case was before us at the fall term of 1940, 218 N.C. 680, 12 S.E.2d 217. At that term we held that the demurrer to the complaint should not have been sustained. We are now holding that the demurrer to the evidence in this case should be sustained. There is no inconsistency in such holdings. "The case was here before, 210 N.C. 815, on demurrer to the complaint, C. S., 511. It is here now on demurrer to the evidence, C. S., 567. The two are not the same in purpose or result. One challenges the sufficiency of the pleadings; the other the sufficiency of the evidence. In negligence cases, it is proper to sustain a demurrer to the evidence and to enter judgment of nonsuit." Smith v. Sink, 211 N.C. 725, 192 S.E. 108. When the Smith case, supra, was first before us on demurrer to the complaint, such demurrer was overruled; when before us the second time the demurrer to the evidence was sustained. Exactly the same situation exists in the case at bar.
The sustaining of the demurrer to the evidence disposes of the appeal and obviates any necessity for the discussion of the other interesting *Page 470 
questions presented in the able briefs and arguments before us. In referring to exceptions relating to the admission of certain evidence and to certain excerpts from the judge's charge this Court said: "However, these exceptions become immaterial and the errors, if any, harmless, since we think the evidence insufficient to require the submission of the case to the jury, and that defendant's motion for judgment of nonsuit should have been allowed." Chinnis v. R. R., supra.
For the reasons stated we are of the opinion, and are impelled to hold, that the motions for judgments as in case of nonsuit duly lodged by the appealing defendants under C. S., 567, should have been allowed. It, therefore, follows that the judgment below must be reversed, and it is so ordered.
Reversed.