### GEORGE MARSHALL v. SOUTHERN RAILWAY COMPANY.

(Filed 13 December, 1950.)

**1. Railroads § 6: Automobiles § 18h (3)—**

In this action to recover for injuries received in a collision at night when plaintiff struck the timbers supporting a railroad overpass which encroached on the street in plaintiff's lane of travel from eight to twelve feet, the evidence *is held* to disclose contributory negligence as a matter of law on the part of plaintiff in failing to keep a reasonably careful lookout and such control over his car as to be able to stop within the range of his lights.

**2. Automobiles § 18c—**

The duty of a motorist to exercise that degree of care for his own safety which an ordinarily prudent person would exercise under similar circumstances requires him to keep a reasonably careful lookout and to keep his car under such control at night as to be able to stop within the range of his lights.

**3. Negligence § 11—**

In order to bar recovery, contributory negligence need not be the sole proximate cause of the injury, it being sufficient for this purpose if it be a proximate cause or one of them.

APPEAL by plaintiff from *Sink, J.,* at 20 March, 1950, Civil Term, High Point Division, of GUILFORD.

Civil action to recover damages for personal injuries sustained by plaintiff when automobile operated by him collided with trestle supports at underpass under railroad of defendant on Ward Street in the city of High Point, North Carolina, allegedly resulting from actionable negligence of defendant.

Plaintiff alleges in his complaint that his injuries were proximately caused by the negligence of defendant in that, summarily stated, it had constructed, and was maintaining an underpass with trestle supports obstructing Ward Street without lights, markings or signals of any kind to warn motorists using said street in the nighttime, when it knew of the dangerous condition thereby created; and in that it permitted said obstruction to remain and exist in violation of an ordinance, Chapter J, Article IV, Section 16 of the City of High Point pertaining to "Obstructions of Streets."

Defendant, answering, denies the allegations of negligence set out in the complaint, and, as further defense, avers: That on the night in question plaintiff, in operating the automobile on Ward Street and approaching the underpass, negligently failed: (1) To have his automobile under control, (2) to keep a proper lookout ahead, and (3) to pay heed to or observe the warning of the red reflectors,—averring particularly that red warning reflectors were located on the supports of the trestle at the underpass in plain view of plaintiff; and that plaintiff carelessly and negligently drove his automobile: (1) At a rate of speed too fast to enable him to stop within the vision of his headlights, (2) at such rate of speed that he was unable to stop after he saw or should have seen the supports of said trestle, and (3) at a rapid and careless rate of speed out of the traveled portion of the street and against the poles and timbers supporting the tracks at the underpass. And defendant avers that all of said negligent acts on the part of plaintiff contributed to, and were proximate causes of his injury and damage, and it pleads such contributory negligence as a bar to plaintiff's recovery.

Upon the trial in Superior Court plaintiff offered evidence as shown in the record, tending to show these facts:

At the time the underpass in question was built on Ward Street, the opening was as wide as the dirt road. Later the street was paved the width of the dirt road. In later years the street was widened on either side of the underpass,—the width in that area being 30 feet. But the timber supports of the defendant's trestle over the street projected from the north side from 8, 10 or 12 feet, as variously estimated by plaintiff and his witnesses, and from the south side about three feet,—leaving the underpass opening of approximately 15 feet in width,—plenty of space through which one car could pass. Thus it is apparent that Ward Street came to dead ends at the trestle to the extent of the projection of the

supports of the trestle. And the underpass, on night of 25 April, 1949, when the collision here involved occurred, was in the same condition it had been for 20 or 25 years. The trestle was supported by heavy dark black round timbers, eight of them, about sixteen inches in diameter. And on and attached to the support next to, and on north side of underpass, there were two red reflectors approximately three inches in diameter, one above the other, about seven feet above the ground.

Traveling west on Ward Street, as plaintiff was, Green Street, also referred to as West Green Street, dead-ends into Ward Street, about 200 feet, as estimated by plaintiff, and about 400 feet in the opinion of his witness, a police officer, before reaching the underpass. It is downgrade from the crest of a hill east of the Green Street intersection toward the underpass, and then upgrade beyond, but nearly level in the immediate vicinity of the underpass.

Plaintiff testified that he was "not too familiar with Ward Street"; that it had been some time since he had been over the street—10 or 12 months prior to the accident; that during 10 or 12 years he had been on Ward Street occasionally but not very often; that he had driven across there a few times, that the way he got up and down Ward Street was in company with another person in a motor vehicle each time; that each time he made that trip up and down Ward Street he had to go through this underpass; that probably he remembered going by there enough to know that there were timbers there just like the one he hit, but that there were two or three underpasses on that street; and that he had not noticed any change in the one he hit from the way it was each time he passed under there.

Plaintiff also testified that at the time he approached the trestle, 11:30 at night, he was driving at speed of around 25 or 30 miles per hour; that as he came over the crest there and started down, it was dark; that there was a car approaching with bright lights; that he dimmed his lights two or three times but he "couldn't see ahead . . . very well"; that he was concentrating on his (the other car's) lights; that the first thing he knew, he looked up and there it was; that he swerved to the left and struck a portion of the trestle,—the first abutment on the right-hand side.

And, on cross-examination, plaintiff testified: That when he started down to the underpass, he did not know exactly where the approaching automobile was; that it had not reached the underpass; that as he approached the underpass he did not know whether the automobile was on the other side of those timbers as it came toward him; that he did not see the timbers, and, quoting, "I did not see the timbers until I hit them. As he approached me I slowed down a bit . . . I was wanting him to dim his lights . . . I don't think I ever did hit my brakes . . . It is

true that I watched Green Street as I came by to see if any traffic was coming in."

Also plaintiff, in answer to question whether he knew the underpass was there, replied, "It didn't dawn on me that the thing was sticking out there. At the time I was thinking of this car."

And plaintiff continuing on cross-examination, testified: "I could see approximately 100 feet in front of me with my headlights on bright . . . I was driving by my dimmers. I was being blinded by his lights. I could see the road between me and him for about 30 feet ahead of me. It happened so quick I didn't have a chance to put my brakes on. It was right in front of me. I did not see those red reflectors on the post . . . They were certainly there the next afternoon. The post the reflector is on is the one I hit."

And the police officer, witness for plaintiff, testified: That those red reflectors are small, about like you see on the back of a bicycle; that he noticed them on the night of the accident; that the speed limit along there is 25 miles an hour; that as he came down Ward Street and by. Green Street to the underpass, he could see the underpass at the time he passed Green Street,—could see it with his headlights.

At the close of plaintiff's evidence motion of defendant for judgment as of nonsuit was allowed. And from judgment in accordance therewith plaintiff appeals to Supreme Court and assigns error.

*York, Morgan & York for plaintiff, appellant.*
*W. T. Joyner and Roberson, Haworth & Reese for defendant, appellee.*

WINBORNE, J. Passing without deciding the question raised as to whether defendant were negligent as alleged in the complaint, it is manifest from the evidence that plaintiff failed to exercise due care at the time and under the circumstances of his injury, and that such failure contributed to, and was a proximate cause of his injury and damage. The case comes within and is controlled by the principles enunciated and applied in *Weston v. R. R.,* 194 N.C. 210, 139 S.E. 237; *Lee v. R. R.,* 212 N.C. 340, 193 S.E. 395; *Beck v. Hooks,* 218 N.C. 105, 10 S.E. 2d 608; *Sibbitt v. Transit Co.,* 220 N.C. 702, 18 S.E. 2d 203; *Dillon v. Winston-Salem,* 221 N.C. 512, 20 S.E. 2d 845; *Pike v. Seymour,* 222 N.C. 42, 21 S.E. 2d 884; *Allen v. Bottling Co.,* 223 N.C. 118, 25 S.E. 2d 388; *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *McKinnon v. Motor Lines,* 228 N.C. 132, 44 S.E. 2d 735; *Riggs v. Oil Corp.,* 228 N.C. 774, 47 S.E. 2d 254; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Cox v. Lee,* 230 N.C. 155, 52 S.E. 2d 355; *Brown v. Bus Lines,* 230 N.C. 493, 53 S.E. 2d 539; *Hollingsworth v. Grier,* 231 N.C. 108, 55 S.E. 2d 806.

See also *Baker v. R. R.*, 205 N.C. 329, 171 S.E. 342; *Montgomery v. Blades,* 222 N.C. 463, 23 S.E. 2d 844.

It is a general rule of law, even in the absence of statutory requirement, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep a reasonably careful lookout and to keep same under such control at night as to be able to stop within the range of his lights.

Plaintiff's negligence need not be the sole proximate cause of the injury to bar recovery. It is enough if it contribute to the injury as a proximate cause, or one of them. *McKinnon v. Motor Lines, supra,* and cases cited.

In the light of these principles, applied to the evidence shown in the record on this appeal, the judgment as of nonsuit entered in the court below is

Affirmed.