JOHN WAYNE ADAMS, BY HIS NEXT FRIEND, J. H. ADAMS, v. BEATY
SERVICE COMPANY, A CORPORATION.

(Filed 30 January, 1953.)

1. **Automobiles § 8a—**

    The operator of a motor vehicle is under duty in the exercise of due care to keep his vehicle under control and to maintain a proper lookout to avoid collision with persons or vehicles, he being under duty to anticipate the presence of others on the highway and to see what he should see in the exercise of due care.

2. **Automobiles § 8e—**

    It is not negligence *per se* to back an automobile on the highway, but in doing so the operator must exercise ordinary care to avoid injury to others by ascertaining the presence of others in the vicinity who may be injured by such movement.

3. **Automobiles § 18h (2)—**

    Plaintiff's evidence tended to show that the operator of a vehicle backed same at a rapid rate, struck the pony upon which plaintiff, a seven year old boy, was riding, knocking him from the pony to the ground and running over his body with the rear wheel of the vehicle. *Held:* The evidence was sufficient to be submitted to the jury on the issue of negligence.

4. **Automobiles § 18g (1)—**

    No inference of negligence arises from the mere fact of an accident.

5. **Trial § 31b—**

    Failure of the court to explain the law arising on the evidence in the case, as required by G.S. 1-180, constitutes prejudicial error.

6. **Same: Damages § 13a—**

    The failure of the court to give the jury any rule for the measurement of damages constitutes prejudicial error.

PARKER, J., took no part in the consideration or decision of this case.

ADAMS *v.* SERVICE CO.

APPEAL by defendant from *McLean, Special Judge,* at 31 May, 1952, Extra Civil Term, of MECKLENBURG.

Civil action to recover for personal injuries allegedly resulting from actionable negligence of defendant.

The plaintiff alleges in his complaint substantially the following:

That he, John Wayne Adams, is a minor seven years of age, and his father, J. H. Adams, is his duly appointed next friend; that defendant is a corporation engaged in the operation of taxicabs,—carrying passengers for hire; that on 8 July, 1951, at about 6 o'clock p.m., plaintiff was riding a pony along a roadway leading off Sugaw Creek road at a point approximately three blocks west of U. S. Highway Number 29; that this roadway is located partially on the property of plaintiff's father,—approximately one-fourth mile from the corporate limits of the city of Charlotte, North Carolina; that at said time and place one E. M. Honeycutt, as agent, servant and employee of defendant, acting within the course and scope of his employment by defendant, was operating Red Top cab number 42, carrying passengers for hire; that after Honeycutt had driven along said roadway a distance of approximately 600 feet, he attempted to back the taxicab along the roadway into Sugaw Creek road; and that in doing so he backed the taxicab into the pony which plaintiff was riding, thereby causing plaintiff to be thrown to the ground, and his body to be run over by the right rear wheel "of defendant's taxicab," to his serious and permanent injury.

And plaintiff further alleges that his injuries were proximately caused by the negligence of defendant, in that, summarily stated: Honeycutt attempted to back the taxicab, when in the exercise of due care he could and should have turned the taxicab around, and driven forward, in safety to persons he knew or should have known were using said roadway; that he backed the taxicab without keeping it under control, and without keeping a proper lookout for traffic upon the roadway; and that he operated the taxicab recklessly, and in willful and wanton disregard for the rights and safety of others, and so as to endanger or be likely to endanger the rights and safety of plaintiff, and others, all in violation of G.S. 20-140.

Defendant, answering the allegations of the complaint, admits that plaintiff is a minor seven years of age, that plaintiff's father is his duly appointed next friend; that it is a corporation; that the roadway is located as alleged; that plaintiff was riding a pony at the place therein described, or in said vicinity; and that at the time and place alleged E. M. Honeycutt was operating Red Top cab number 42, along said roadway. But defendant denied all other allegations of the complaint.

And defendant, for a further answer and defense, and in bar of plaintiff's right to recover, averred in pertinent part substantially the following:

ADAMS *v.* SERVICE CO.

"2. That defendant is informed, advised and believes, that on July 8, 1951 the said E. M. Honeycutt with two passengers in his cab, was seeking to locate certain parties who lived on a road leading off the Sugaw Creek road, not far from the city limits of Charlotte. That after turning off the Sugaw Creek road and going approximately 100 feet up a side road, it was determined that they were on the wrong road, and therefore, E. M. Honeycutt backed said taxicab about 50 feet and came to a dead stop, and was then and there discussing with said passengers the direction he should proceed from said point. That while said taxicab was stopped on said side road, a young boy, the minor plaintiff, emerged from a side road on the other side of Sugaw Creek road, riding a pony at a full, fast and furious gallop, and at a runaway speed, crossing said Sugaw Creek road at an angle with said pony apparently out of control, and as it raced up to said taxicab, which had stopped in said road, said pony dashed up to and within a few feet of said vehicle, threw his front feet forward and lowered his head, and came to a complete stop hurling said minor plaintiff through the air, and against the upper portion of the rear end, or trunk, of said taxicab, the pony after dismounting its rider trotted around said taxicab and headed for the stable.

"3. That the taxicab operated by E. M. Honeycutt was not in motion at the time minor plaintiff was thrown from said pony, and it is specifically denied that the wheels of said taxicab passed over any part of the body of minor plaintiff. That the driver of said taxicab was in, or what appeared to be, a public road and there were no signs or notices that requested the public to keep out or not travel this road.

"4. It is specifically denied that any injury received by said minor plaintiff was in any wise attributable to any act of negliegnce on the part of this defendant, or the driver of said taxicab. The injury sustained by said minor plaintiff was due to his inability to control the speed and conduct of the pony upon which he was riding, and the sudden stop of said pony upon its approach to said vehicle, and the lowering of its head, which after traveling at the fast and furious speed caused said minor plaintiff to be hurled through the air and strike the rear end of said vehicle which was then and there stopped in said road."

The parties to this action through their respective attorneys in the court below, stipulated in pertinent part:

"1. That the motor vehicle, to wit: Red Top Taxicab No. 42, involved in the accident complained of in this action, was on July 8, 1951, owned by and registered in the name of the defendant, Beaty Service Company.

"2. That at the time complained of in the complaint the said motor vehicle was being driven by one E. M. Honeycutt, with the knowledge and consent of the defendant, Beaty Service Company.

"3. That Chapter 3 of the ordinances of the city of Charlotte, North Carolina, were duly enacted and were in full force and effect on July 8, 1951, and the court may take judicial notice thereof and the same may be introduced into evidence.

"4. That the accident complained of by the plaintiff took place at a point less than one-half mile from the corporate limits of the city of Charlotte, North Carolina."

Upon the trial in Superior Court, plaintiff offered the testimony of John Hope Adams, father of, and next friend to plaintiff, of Ronald Hope Adams, 14-year-old brother of plaintiff, and of W. J. McCorkle, which tends to show that they were at the pony barn of John Hope Adams, 225 to 250 feet from the point where the accident occurred which is in a "little road" that leads off the north side of the Sugaw Creek road down to the pony barn,—at which John Hope Adams kept seven ponies for hire for riding; that the point of the accident was forty to fifty feet from the Sugaw Creek road, and on the side of the "little road" or "driveway" next to the barn; that neither of them saw the accident, nor did either of them see the plaintiff and his pony, or the taxicab immediately before, and at the scene of the accident; but that they heard the noise and went to the scene.

The testimony of these witnesses tends further to show:

That this "little road" was in part on the land of John Hope Adams, and on his side of it there is a fence; that "there is just enough room for two cars to squeeze through the road itself"; that about six o'clock after noon on 8 July, 1951, a clear day, and still daylight, the taxicab in question stopped on this road or driveway, as sometimes referred to, headed in the direction of, and near to the pony barn; that John Hope Adams, accompanied by W. J. McCorkle, drove his automobile down the road around the taxicab, and pulled right in front of it, and stopped in "the turning space," John Hope Adams saying, "I pushed right in front of him"; that (again quoting John Hope Adams) "a little bit further down there was a place out in the field where he usually turned around . . . where he turned around and came out forward; that the turning space was not on his property, but on the other side of other property that he had . . . rented."

W. J. McCorkle testified that "when he came in a Red Top cab was in the driveway, and we pulled around to the side of the barn; that he and . . . plaintiff's father walked around by the side of the barn to look at a pony, and heard an impact; that it sounded like a car striking something, or like a car and something had run together."

Ronald Hope Adams testified that "The Red Top cab drove down to near the pony barn where he was; that there was a man and a woman in the back seat, and a man in the front seat; that the man wanted to know

where Mr. Watson lived and he told him that he did not know; that the man then rushed his motor and started out and that's all he heard; that his father and Mr. McCorkle were at the pony barn . . . that after he spoke to the man in the cab he turned around and started to walk off and heard the car taking off pretty fast . . . backing," and "that he did not see the cab back up from where he left it up to where the accident took place,"—"he just backed straight out, on our side of the road."

And John Hope Adams testified that he "heard the cab leaving, that he heard it crank up, and it was a matter of seconds when he heard a crash . . ."

And Ronald Hope Adams also stated that before the accident plaintiff "went off on his pony . . . I forget when he went . . . just what time." However, on cross-examination, the witness testified that he did not believe he said that.

And the evidence further tends to show that when plaintiff's brother, Ronald Hope Adams, reached the scene, he being the first to get there, plaintiff was lying on the ground,—all of his body except his head being underneath the cab between the right front and right rear wheels, and the pony, 39 to 40 inches high, and 18 years old, was standing there against the fence.

Mr. McCorkle testified that when he first got there the plaintiff was in the general vicinity of the right rear wheel of the cab, right in front of the rear wheel—when they picked him up.

And the father of plaintiff testified that he got his car and came back,—one wheel being in the ditch, and passed the cab on the right,—both drivers' seats being together as he passed. The evidence further tends to show that plaintiff was put in his father's car from the right side, and then taken to the hospital.

And the evidence also tends to show that when examined at the hospital the body of plaintiff had a regular pattern of bruises across the left arm, chest and to the right armpit—about three or three and a half inches' wide, and more of diamond shapes than a flat mashed place,—there being slight space between each; that there were marks on the outside of plaintiff's shirt in the nature of discoloration similar to that described on the chest; that the humerus bone of the left arm was broken, and that a doctor found that the lung on the left side had "a minimal partial collapse." In this connection W. J. McCorkle testified that he did not observe the tire of the cab.

There is also evidence tending to show "that the saddle on the left side that protects your leg from the horse was torn off, and the stirrup was torn off and, right behind where you sit, there was a place on the saddle" which has since been repaired.

And there is evidence tending to show that Mr. McCorkle and Ronald Hope Adams did not talk with any of the people in the cab, except as above related, and there is no evidence that the father of plaintiff talked with either of them.

Defendant did not offer evidence. Motions of defendant, aptly made, for judgment as of nonsuit were denied. Defendant excepted.

The case was submitted to the jury upon issues as to negligence of defendant, and as to damages, both of which were answered in favor of plaintiff.

And from judgment on the verdict, defendant appeals to Supreme Court and assigns error.

*Frank H. Kennedy, Charles E. Knox, and Marvin Lee Ritch for plaintiff, appellee.*

*Porter B. Byrum and William M. Nicholson for defendant, appellant.*

WINBORNE, J. For determination of this appeal it is necessary to advert to, and consider only two questions arising on assignments of error: (1) To denial of defendant's motions for judgment as of nonsuit, and (2) to failure of the trial judge to properly charge the jury on the rule to be applied in assessing damages.

As to the first question: Taking the evidence offered upon the trial in Superior Court, as shown in the record of case on appeal, and now before this Court, to be true, and in its most favorable light to plaintiff, together with reasonable intendments and legitimate inferences fairly deducible therefrom, we are of opinion, and hold that the evidence is sufficient to withstand demurrer, G.S. 1-183, and to carry the case to the jury.

It is a general rule of law that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. This duty also requires that the operator must be reasonably vigilant, and that he must anticipate and expect the presence of others. *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211, and cases cited. See also *Henson v. Wilson,* 225 N.C. 417, 35 S.E. 2d 245.

And it is said in *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330, a case somewhat similar to the one in hand: "It is the duty of the driver of a motor vehicle not merely to look, but to keep an outlook in the direction of travel, and he is held to the duty of seeing what he ought to have seen." This principle is quoted and applied in *Henson v. Wilson, supra.*

Moreover, it is not negligence *per se* to back an automobile on the highway. *Newbern v. Leary,* 215 N.C. 134, 1 S.E. 2d 384. And while the law does not forbid the backing of an automobile upon streets and highways, and to do so does not constitute negligence, the driver of an automobile must exercise ordinary care in backing his machine so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured. *Taulborg v. Andresen* (Neb.), 228 N.W. 528, 67 A.L.R. 642. See Annotation 67 A.L.R. 647 on subject "Liability for damage or injury while automobile is being backed."

In the light of these principles applied to the evidence in the case in hand, we are of opinion and hold that the evidence taken as true is susceptible of these inferences: (1) That plaintiff was in the "little road" between the taxicab and Sugaw Creek road, as the taxicab backed down the "little road" toward Sugaw Creek road; (2) that if he were there, the operator of the taxicab saw him and his pony, or by the exercise of ordinary care could and should have seen him; (3) that the operator of the taxicab was backing it at fast speed, when he had knowledge of the width of "little road," and of the surroundings, and knew, or ought to have known that under such circumstances a collision with and injury to persons, animals or vehicles upon the "little road" was likely to occur. If the jury should so find the facts from the evidence, and by its greater weight, it was the duty of the operator of the taxicab to exercise ordinary care to avoid collision with plaintiff, and his failure to do so would be negligence. This case is distinguishable in factual situation from the cases of *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661; *Pack v. Auman,* 220 N.C. 704, 18 S.E. 2d 247; *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406, relied upon by appellant.

Defendant denies that the operator of the taxicab was negligent. This raises an issue of fact which alone the jury may decide. We express no opinion upon the weight of the evidence.

It is appropriate to say that no inference of negligence arises from the mere fact of an accident or injury, nor from the failure of the operator of the taxicab to turn around under the surroundings as revealed by the evidence in the case in hand.

Now as to the second question: G.S. 1-180, as rewritten by Chapter 107, Session Laws 1949, provides that the judge in giving a charge to the petit jury, either in a civil or criminal action, shall declare and explain the law arising on the evidence given in the case. And decisions of this Court are uniform in holding that failure of the judge to observe and comply with the provisions of this statute is error for which a new trial must be ordered. See *Wilson v. Wilson,* 190 N.C. 819, 130 S.E. 834; *Spencer v. Brown,* 214 N.C. 114, 198 S.E. 630; *Lewis v. Watson,* 229

N.C. 20, 47 S.E. 2d 484; *S. v. Washington,* 234 N.C. 531, 67 S.E. 2d 498. See also *Hawkins v. Simpson, post,* 155, where the authorities are assembled.

In *Wilson v. Wilson, supra,* in opinion by *Varser, J.,* it is said, "This statute C.S. 564 (now G.S. 1-180) created a substantial legal right in the parties . . . It is error to fail to comply with it. In the instant case the court . . . did not state the rule for the admeasurement of damages . . ." A new trial was granted.

Applying these provisions of the statute to case in hand, it is seen that the charge of the trial court fails to give to the jury any rule of damage in such cases. This was prejudicial error, for which defendant is entitled to a new trial.

Hence, let there be a

New trial.

PARKER, J., took no part in the consideration or decision of this case.