## J. P. BADDERS v. HENRY H. LASSITER.

(Filed 4 June, 1954.)

**1. Negligence § 5—**

Contributory negligence need not be the sole proximate cause of injury to bar recovery; it is sufficient for this purpose if it contribute to the injury as a proximate cause, or one of them.

**2. Automobiles § 8i—**

A driver along a servient street is required, in compliance with G.S. 20-158, to bring his vehicle to a stop in obedience to a stop sign lawfully erected, and not to proceed into an intersection with the dominant highway until, in the exercise of due care, he can determine that he can do so with reasonable assurance of safety. G.S. 20-154.

**3. Same: Automobiles § 18h (3)—Evidence held to disclose contributory negligence as matter of law on part of driver in starting across intersection with dominant highway.**

The evidence favorable to plaintiff tended to show that his wife was driving his family purpose automobile along a servient street, that she stopped at the sign located on the servient street 10 or 12 feet from the intersection with the dominant street, that she saw defendant's automobile about a block away, and that she then changed to low gear and went on across the intersection at a speed of five miles per hour and did not again look to her right, and did not see or hear anything until the impact. There was no evidence that defendant's vehicle was being driven at excessive speed. *Held:* Plaintiff's own evidence discloses contributory negligence as a matter of law in the failure of plaintiff's wife to keep a reasonably careful lookout and in starting across the intersection without reasonable assurance that she could traverse the intersection in safety.

**4. Trial § 25—**

Nonsuit of plaintiff's cause of action upon defendant's motion effects a voluntary nonsuit on defendant's counterclaim.

ERVIN, J., dissents.

APPEAL by defendant from *Fountain, S. J.,* at 18 January, 1954, Civil Term of WAKE.

Civil action to recover property damage sustained in automobile collision allegedly resulting from actionable negligence of defendant.

The record discloses that about 3 :20 p.m. on 30 May, 1952, plaintiff's Ford automobile operated by his wife in southern direction on Woodburn Road was in collision with defendant's Chevrolet automobile, operated by him in an eastern direction on Clark Avenue, at the intersection of Woodburn Road and Clark Avenue in Cameron Village, in the city of Raleigh, North Carolina; that defendant, answering, denied liability to plaintiff for that he avers he was not negligent, but that the operator of plaintiff's car was negligent; and that under the family-purpose doctrine, he pleads her negligence as a contributing cause of the collision, imputable to plaintiff, and sets up a cross-action to recover for damage to his automobile sustained in the collision; and that to this, plaintiff filed reply denying in material aspect all averments constituting defendant's further answer and counterclaim, and reiterating his allegations as to negligence of defendant, and as to it being the proximate cause of the collision.

The uncontroverted evidence tends to show these facts and circumstances at the scene and time of the collision here involved : Woodburn Road, a paved subservient street, thirty feet wide, running north-south direction, intersects with Clark Avenue, a paved street forty-four to fifty feet wide, running in east west direction. Daniels Street, which also intersects with Clark Avenue, is the next street, a block west of, and parallel to Woodburn Road. In the block between Woodburn Road and Daniels Street there is nothing to obstruct from the view of one traveling south on Woodburn Road, traffic moving east on Clark Avenue, or to obstruct from the view of one traveling east on Clark Avenue, traffic moving south on Woodburn Road. The terrain is level. The weather was sunshiny and the streets dry.

Upon trial in Superior Court the parties stipulated :

1. That at the time alleged in the pleading in this action, the automobile operated by plaintiff's wife, belonged to him and was maintained by him as a family-purpose car.

2. That going south approaching the intersection of Woodburn Road and Clark Avenue, there is a Stop sign erected, pursuant to authority, by the city of Raleigh.

3. That both parties may offer evidence of repair bills to their respective motor vehicles as substantive evidence of damages alleged.

Also upon the trial in Superior Court, plaintiff's wife, as a witness for him, gave this narrative pertinent to this appeal : ". . . 30 May, 1952, at about 3 :20 in the afternoon . . . I had started home, went out Woodburn Road . . . As I approached the intersection of Woodburn Road and

Clark Avenue going south I stopped because there was a stop sign there . . . ten or twelve feet from the intersection. After I stopped I looked to the left and no car was coming and then looked to the right and Mr. Lassiter's car was a city block away, approximately, and I changed to low gear and went on across the street . . . Mr. Lassiter's car was just past Daniels Street intersection when I saw it . . . and after my front wheels were on the curb of Clark Avenue across the street I was hit. The rear all the way to the door . . . was struck on the right side by Mr. Lassiter's automobile. It was quite an impact. It knocked my car completely around . . . facing west and hit a post . . . on the sidewalk . . . on the west side of Woodburn Road and south side of Clark Avenue." Then the witness was asked these questions to which she gave answers as indicated: "Q. Did you have occasion to look again after you had started across Clark Avenue? A. No, I did not. Q. Why didn't you look again? A. Well, I was quite sure he was a distance so that I had plenty of time to get across the street." The witness also testified that after the collision, defendant said to her: "To tell you the truth, I didn't see you until I hit you."

Then on cross-examination the witness continued: ". . . The car was in good condition, the horn would blow and the brakes were all right. If I had applied my brakes I could have stopped almost instantly . . . I do not know how far the stop sign is back from the curb line of Clark Avenue . . . I was traveling . . . on my side of the street and I stopped just below the stop sign . . . When I came up here and stopped, Mr. Lassiter's car was just this side of Daniels Street when I saw him and I proceeded to go across the street . . ." Then these questions were asked, to which the witness answered as indicated: "Q. You didn't look any more? A. Not after I started, no, I did not . . . Q. . . . Was there anything to cause you to think he was going fast? A. Not at the time, no. Q. And then you came on across this intersection? A. That's right. Q. And coming across this wide intersection you didn't look again to your right? A. No, because I was sure I had time to cross . . . Q. In other words, you misjudged the distance and the speed? A. I sure did the speed . . . Q. How fast were you traveling across the intersection? A. I would say about five miles an hour. I did not change gears . . . I did not increase my speed at any time across the wide intersection . . . I did not hear the car before I was hit . . . My windows were up on that side . . . I didn't hear or see anything until the impact occurred . . ."

C. T. Poole, an officer, as witness for plaintiff, testified: That he had occasion to investigate the collision on 30 May, 1952; that the skid marks from defendant's car were 25 feet straight, leading up to the point of impact; that there were no skid marks made by plaintiff's car, except sideways—approximately 5½ to 6 feet from the south curb line of Clark

Avenue; that Clark Avenue is 44 feet wide and Woodburn Road is 30 feet wide; and that the stop sign on Woodburn Road is about 15 or 20 feet from Clark Avenue.

Defendant, reserving exception to denial of his motion for judgment as of nonsuit, made at close of plaintiff's evidence, offered evidence. And as a witness for himself he testified : ". . . I knew there was a stop sign on Woodburn Road at a point where it intersects with Clark Avenue. I came into Clark Avenue from Oberlin Road. As I proceeded on Clark Avenue . . . and when I got approximately 50 feet from the intersection of Woodburn Road and Clark Avenue, to my left I noticed a car approaching, and when I got, I would say, approximately 30 feet from the intersection, I saw that the car was not going to stop. I was traveling at a rate of speed between 20 and 25 miles an hour . . . The first time I observed that motor vehicle on Woodburn Road, it was approximately 30 feet from the intersection and it was traveling at about 15 miles per hour . . . The car did not stop at the stop sign. When I approached the intersection, I was of the opinion that the car would slow down and come to a stop, but it didn't . . . I applied my brakes and pulled to the right . . . My car moved straight forward at the time it was skidding . . . The front end of my vehicle hit Mrs. Badders' vehicle in the side near the door . . ." And in answer to the question, "And you didn't tell her that you didn't see her until you hit her, did you?", defendant answered, "No, sir."

And under cross-examination defendant testified substantially as he had on direct examination, and, continuing, he said : "The impact did not take place when the front of Mrs. Badders' car was crossing the curb line of Clark Avenue. It was further up into the intersection when I hit her . . . it was approximately 10 feet from the curb." Then defendant was asked these questions to which he answered as indicated : "Q. It is an open field across there . . . wasn't it? A. That's right, it was.

"Q. But you didn't see her, you say, until she was some 30 feet from the intersection? A. Approximately 30 feet from it.

"Q. Why didn't you see her before that, had you looked? A. I don't know why I didn't see her. I did not look up that street at any point prior to the time I saw her 30 feet from the intersection . . . I do not know how fast my car was going when the cars collided . . ."

At the close of all the evidence, "defendant renewed motion for judgment as of nonsuit, and moved for a directed verdict on the second issue. Denied. Defendant's exception No. 3."

The case was submitted to the jury upon six issues as to (1) negligence (2) contributory negligence, and (3) damages, all in respect to plaintiff's alleged cause of action; and (4) negligence, (5) contributory negligence, and (6) damages, all in respect to defendant's counterclaim. The jury

for verdict answered the first issue "Yes," the second "No," and the third "$396.52," and did not answer the 4th, 5th and 6th issues. In accordance therewith the court entered judgment for plaintiff. Defendant excepted thereto, and appeals to Supreme Court and assigns error.

*Smith, Leach, Anderson & Dorsett for plaintiff, appellee.*
*Teague & Johnson and Wright T. Dixon, Jr., for defendant, appellant.*

WINBORNE, J. The determinative question here is whether or not the trial court erred in denying defendant's motions for judgment as of nonsuit, and this question is determinable by the answer to another question as to whether or not the evidence offered by the plaintiff upon the trial below shows, as a matter of law, that, at the time and place of the collision here involved, plaintiff's wife was contributorily negligent in the operation of plaintiff's family-purpose automobile.

Conceding that the evidence offered upon the trial in Superior Court, as shown in the case on appeal, pertaining to the issue as to negligence of defendant, is sufficient to take the case to the jury, *Johnson v. Bell,* 234 N.C. 522, 67 S.E. 2d 658, this Court is constrained to hold that the uncontradicted testimony of plaintiff's wife, as witness for him, leads inevitably to the conclusion that she was negligent in the operation of plaintiff's family-purpose automobile, and that such negligence was at least a contributing cause of the collision. G.S. 20-158 (a), *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361. Plaintiff's negligence need not be the sole proximate cause of the injury to bar recovery. It is enough if it contribute to the injury as a proximate cause, or one of them. *Marshall v. R. R.,* 233 N.C. 38, 62 S.E. 2d 489.

The statute, G.S. 20-158, declared that (a) The State Highway and Public Works Commission, with reference to State highways, and local authorities, with reference to highways under their jurisdiction, are authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and that wherever any such sign has been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. And the same section of the statute also declares that "No failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether plaintiff in such action was guilty of contributory negligence." *Johnson v. Bell, supra.* See also *Sebastian v. Motor Lines,* 213 N.C. 770, 197 S.E. 539; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239; *Hill v. Lopez,* 228 N.C. 433, 45 S.E. 2d 539; *Nichols v.*

14—240

*Goldston,* 228 N.C. 514, 46 S.E. 2d 320; *Lee v. Chemical Corp.,* 229 N.C. 447, 50 S.E. 2d 181.

"The purpose of highway stop signs," as stated by this Court in opinion by *Devin, J.,* later *C. J.,* in the *Matheny case, supra,* "is to enable the driver of a motor vehicle to have opportunity to observe the traffic conditions on the highways and to determine when in the exercise of due care he might enter upon the intersecting highway with reasonable assurance of safety to himself and others . . . And the statute G.S. 20-154 also requires that before starting from a stopped position and moving into the line of traffic the driver shall first see that such movement can be made in safety."

And in the *Matheny case* the Court went on to say that "Since at the intersection described in the case at bar the driver of an automobile approaching the intersection from the north was required (G.S. 20-158) to bring his automobile to a complete stop, the right of way, or rather the right to move forward into the intersection would depend upon the presence and movement of vehicles on the highway which he intended to cross. The rule as to right of way prescribed by G.S. 20-155 applies to moving vehicles approaching an intersection at approximately the same time . . . Where the driver has already brought his automobile to a complete stop, thereafter the duty would devolve upon him to exercise due care to observe approaching vehicles and to govern his conduct accordingly. One who is required to stop before entering a highway should not proceed, with oncoming vehicles in view, until in the exercise of due care he can determine that he can do so with reasonable assurance of safety . . . Generally when the driver of an automobile is required to stop at an intersection he must yield the right of way to an automobile approaching on the intersecting highway . . ., and unless the approaching automobile is far enough away to afford reasonable ground for the belief that he can cross in safety he must delay his progress until the other vehicle has passed." See also *Cooley v. Baker,* 231 N.C. 533, 58 S.E. 2d 115; *S. v. Hill,* 233 N.C. 61, 62 S.E. 2d 532; *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 23.

Moreover, the Court further declared in the *Matheny case* that "the right of one starting from a stopped position to undertake to cross an intersection would depend largely upon the distance from the intersection of approaching vehicles and their speed, and unless under the circumstances he would reasonably apprehend no danger of collision from an approaching vehicle it would be his duty to delay his progress until the vehicle has passed."

Furthermore, it is a general rule of law that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances.

And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. *Adams v. Service Co.,* 237 N.C. 136, 74 S.E. 2d 332, and cases cited.

And it is said in *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330, "It is the duty of the driver of a motor vehicle not merely to look, but to keep an outlook in the direction of travel, and he is held to the duty of seeing what he ought to have seen . . ." See also *Henson v. Wilson,* 225 N.C. 417, 35 S.E. 2d 245.

In the light of the statutes, and these principles of law, applied to the evidence in hand, these questions arise: Did plaintiff's wife, before entering Clark Avenue, the designated highway, in the exercise of due care determine that she could do so with reasonable assurance of safety? And did she exercise due care in the operation of the automobile in crossing the intersection? She admits that she misjudged the speed of defendant's automobile. And she says that she stopped at the stop sign located 10 or 12 feet from the intersection; that she saw defendant's automobile about a block away; that she then changed to low gear and went on across the street at a speed of five miles per hour; and that she did not look again to her right, and did not "hear or see anything until the impact occurred." Manifestly, her decision to start across the intersection lacked reasonable assurance of safety, and the operation of the automobile by her in traversing the intersection without keeping a reasonably careful lookout, establishes lack of ordinary care.

Hence the motion of defendant for judgment as of nonsuit should have been allowed. For defendant, by moving for judgment as of nonsuit, in effect, submitted to a voluntary nonsuit on the counterclaim set up by him. *Bourne v. R. R.,* 224 N.C. 444, 31 S.E. 2d 382.

The judgment below is
Reversed.

ERVIN, J., dissents.