GLENNON W. SWAIN v. GEORGE WAYNE WILLIAMSON AND GEORGE C. WILLIAMSON, JR.

No. 691SC54

(Filed 28 May 1969)

**1. Trial § 21— motion to nonsuit — consideration of evidence**

On a motion to nonsuit, plaintiff's evidence is to be taken as true and all the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence.

**2. Automobiles § 62— intersection accident — motorcyclist—pedestrian — sufficiency of evidence**

Evidence that plaintiff pedestrian was attempting to cross an intersection at a point not a crosswalk, that the speed limit was 55 miles per hour and the highway was straight for a considerable distance on either side of the intersection, that plaintiff, who saw defendant's oncoming motorcycle about 300 feet away, stepped off the curb and proceeded to cross directly in front of defendant, that plaintiff did not again look in defendant's direction but instead focused his attention in the opposite direction, and that a collision resulted despite defendant's attempt to stop, *held* insufficient to withstand defendant's motion to nonsuit.

**3. Automobiles § 40— intersection — pedestrian's duty at place not a crosswalk**

A pedestrian crossing an intersection at a point which is neither a marked nor an unmarked crosswalk has the duty to yield the right of way to all vehicles upon the highway. G.S. 20-174(a).

**4. Automobiles § 40— pedestrian at crossing — duty of oncoming motorcyclist**

Motorcyclist approaching an intersection was not required to warn pedestrian of his presence where pedestrian had already seen the motorcycle and was conscious of its presence and knew of its approach.

APPEAL by plaintiff from *Fountain, J.,* 7 October 1968, Civil Session, PASQUOTANK County Superior Court.

Glennon W. Swain (plaintiff) instituted this civil action on 11 October 1966 to recover for personal injuries allegedly sustained as the result of the actionable negligence of George Wayne Williamson (operator), the driver of a Honda motorcycle, the title to which was registered in the name of George C. Williamson, Jr., (owner) the father of the operator.

The evidence on behalf of the plaintiff tends to show that Hughes Boulevard (Boulevard) is a four-lane highway running in a north-south direction in Elizabeth City, Pasquotank County; it constitutes U. S. Highway No. 17 Bypass of Elizabeth City and is the main north-south highway between Norfolk, Virginia, and Elizabeth City

and points south; there are two lanes for northbound vehicular traffic and two lanes for southbound vehicular traffic; each lane is approximately eleven feet in width; there is a double white line in the middle of the highway and a single white line dividing the northbound lanes; there are no sidewalks along the easterly side of Boulevard or along the northerly side of Church Street, which intersects Boulevard.

The evidence on behalf of the plaintiff further tends to show that about 4:36 p.m. on Sunday, 8 May 1966, the plaintiff attempted to walk across Boulevard; he entered the highway from the easterly side of Boulevard at a point some 23 to 25 feet north of the northerly curb line of Church Street where said curb line intersects Boulevard; the plaintiff was knocked down within the westerly or inside northbound lane by a Honda motorcycle being driven by operator; immediately after the accident, the operator was lying in the highway south of where the plaintiff was lying in the highway; there was glass and other debris located at approximately the center of the westerly northbound lane; this glass and debris was located 25 feet north of the projected northerly curb line of Church Street and 15½ feet from the easterly curb of Boulevard; the motorcycle came to rest in the highway south of where the operator was lying; at that point, there were approximately 2 feet of scuffed up or skid marks, which were referred to in the testimony as sideways skid marks; proceeding in a southerly direction for a distance of 30 feet, there were no marks; then a single skid mark continued in a southerly direction from the westerly or inside northbound lane into the easterly or curb northbound lane for a distance of 43 feet. The plaintiff sustained a fractured pelvis.

At the close of the evidence for the plaintiff, the motion of the defendants for judgment as of nonsuit was sustained and the action dismissed. The plaintiff thereupon appealed to this Court.

*Leroy, Wells, Shaw & Hornthal by L. P. Hornthal, Jr., for plaintiff appellant.*

*Aydlett & White by Gerald F. White for defendant appellees.*

CAMPBELL, J.

[1]  "On a motion to nonsuit, plaintiff's evidence is to be taken as true, and all the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues, which may be reasonably deduced from the evidence. . . ." 7 Strong, N. C. Index 2d, Trial, § 21, p. 294.

**[2]**  The evidence considered in the light most favorable to the plaintiff reveals that the afternoon of Sunday, 8 May 1966, was sunshiny; Boulevard was straight and a person could see both to the north and to the south for many hundreds of feet; there were no sidewalks in the vicinity; before stepping off the curb, the plaintiff looked to the south and "saw these boys coming, about three hundred feet"; at that time, the motorcyclists were near Rhodes' Trailer Court, which was located about three hundred feet from the scene of the accident; these motorcyclists were traveling north and "(t)hey were in the lane next to the curb" of Boulevard; the plaintiff testified, "I thought I could get across, and so I stepped down and went on across, walking, and I got as far as the second lane, and I didn't know no more"; he further testified, "before I started walking across, I looked north, and then I was struck down"; as he was crossing the highway, the plaintiff was looking to the north to see if anything was coming from that direction; he did not again look to the south, from whence the operator's motorcycle was coming, and he did not again see these motorcycles; the plaintiff crossed the easterly northbound lane, but he was struck after reaching the westerly northbound lane; he did not again see the motorcycle which struck him after stepping off the curb. The plaintiff testified, "Well, I wasn't walking real fast, and not walking real slow. Kinda medium, I should say."

The investigating police officer testified that Boulevard constitutes U. S. Highway No. 17 Bypass and is the main artery of traffic around Elizabeth City; when he arrived at the scene of the accident, he observed a single skid mark in the easterly northbound lane of Boulevard extending for a distance of 43 feet and crossing the single white line into the westerly northbound lane; then after a space of 30 feet with no marks, there was another skid mark in the westerly northbound lane about 2 feet long and sideways; this latter mark was at a point 15½ feet from the easterly curb of Boulevard; at that point there was glass and debris; the glass and debris was at a point 25 feet north of the projected northerly curb line of Church Street; the motorcycle was lying in the highway; the operator was lying in the highway to the north of the motorcycle, and the plaintiff was lying in the highway to the north of the operator.

There was no evidence indicating any special speed restrictions. Therefore, the permitted speed limit would be 55 m.p.h. G.S. 20-141.

**[3]**  The plaintiff was a pedestrian crossing Boulevard from east to west at a point which was neither a marked crosswalk nor an unmarked crosswalk. Therefore, the plaintiff did not have the right of

way, and it was incumbent upon him to yield the right of way to all vehicles upon the highway. G.S. 20-174(a).

The plaintiff relies heavily upon *Wanner v. Alsup*, 265 N.C. 308, 144 S.E. 2d 18. However, the case is readily distinguishable from the instant case. The Supreme Court stated:

"The plaintiff's evidence . . . was to the effect that testatrix was plainly visible for 'a long distance', but that defendant made no attempt to avoid striking her or to warn her of his approach; nor did he slow down, stop, or try to turn away from the testatrix when he came in close proximity to her when she had reached within a very short distance of the curb on the eastern side of the street."

[4] In the instant case, it was not necessary for the operator to warn the plaintiff of his presence, because the plaintiff had already seen the motorcycle and because he was conscious of its presence and knew of its approach. The plaintiff simply misjudged the speed of the motorcycle and the relative time required for him to walk across the highway in front of the motorcycle. *Wanner* is also distinguishable since there the plaintiff had almost crossed the street, whereas here the plaintiff had just started.

"The law imposes upon a person *sui juris* the duty to use ordinary care to protect himself from injury. It was plaintiff's duty to look for approaching traffic before she attempted to cross the highway. Having started, it was her duty to keep a lookout for it as she crossed. . . . It behooved her to keep his approaching vehicle under constant surveillance. Instead, she continued into the path of an automobile which had been approaching on a thoroughfare, straight for a mile in the direction from which it came. Apparently, she paid it no heed until she entered its lane of travel when it was only forty-five feet away. Had defendant been going twenty miles per hour when plaintiff stepped into his path, he could not have stopped in time to avoid the accident. Plaintiff by simply standing still in the inside lane could have done so.

Plaintiff is an adult woman. So far as this record discloses she was under no disability, and there was nothing to put defendant on notice that she was oblivious to his approach or that she would fail to stop and yield him the right of way. Under those circumstances he was not required to anticipate negligence on her part." *Blake v. Mallard*, 262 N.C. 62, 136 S.E. 2d 214.

[2] In the instant case, the plaintiff was *sui juris* and under no dis-

ability. He saw and observed the oncoming motorcycle. However, he did not yield the right of way to the motorcycle as was his duty. On the contrary, he discontinued looking at it, stepped off the curb, and proceeded to cross directly in front of the motorcycle without again looking to the south when he knew of its approach. He deliberately focused his attention to the north. The evidence discloses that, when the operator realized that the plaintiff was not going to yield the right of way to him, he endeavored to bring his motorcycle to a stop and began skidding the motorcycle's wheels at a distance of some 75 feet from the plaintiff. However, the plaintiff could have stopped and yielded the right of way at any time and thus avoided the collision.

Under this evidence, the plaintiff was basically in the same position as the plaintiff in *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357. In that case, the plaintiff, who was operating a motor vehicle, misjudged the speed of an oncoming automobile and proceeded out in front of this automobile, thus bringing on a collision. The Supreme Court stated:

"Manifestly, her decision to start across the intersection lacked reasonable assurance of safety and the operation of the automobile by her in traversing the intersection without keeping a reasonably careful lookout, establishes lack of ordinary care."

In the instant case, the plaintiff, who was *sui juris* and under no disability, misjudged the speed of the oncoming motorcycle and proceeded into its path without keeping any lookout at all toward the south.

The judgment below is
Affirmed.

Britt and Morris, JJ., concur.