EUGENE WALL, ADMINISTRATOR OF THE ESTATE OF JAMES WALL, DECEASED, v. M. C. BAIN.

(Filed 16 December, 1942.)

**1. Negligence § 19a: Trial § 22a—**

In passing upon the negligence of defendant on a motion to nonsuit, the evidence must be taken in the light most favorable to the plaintiff, who is entitled to all reasonable inferences therefrom.

**2. Same—**

While the statute, C. S., 567, requires on a motion to nonsuit, a consideration of the whole evidence, it is clear that only that part of the defendant's evidence · which is favorable to plaintiff can be taken into consideration, since, otherwise, the court would pass upon the weight of the evidence, the credibility of which rests solely with the jury.

**3. Automobiles §§ 8, 9a—**

It is the duty of the driver of a motor vehicle not merely to *look* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen.

**4. Automobiles §§ 9g, 18g—**

Where one backs a truck along a city street, in a traffic lane devoted to travel in the opposite direction, the operation involves a greater danger than ordinary travel, and, in making such backward movement, the care required must be adequate to the danger involved. *Held:* The granting of a motion of nonsuit erroneous, where the driver of a truck stopped on a sharp downgrade of a city street, right side, and, after he and a companion had looked back on each side from the cab of the truck seeing no one, backed the truck about three feet, killing instantly a delivery boy coming after the truck on a bicycle, which showed signs of skidding for twenty-nine feet.

APPEAL by plaintiff from *Johnson, J.,* at 21 September, 1942, Term, of GUILFORD. Reversed.

This is an action to recover damages for the alleged negligent injury to plaintiff's intestate, resulting in death. The negligence is alleged to have consisted in the operation of an oil truck by the defendant Bain, by which a collision was caused between the oil truck and a bicycle on which plaintiff's intestate was riding.

We summarize the evidence pertinent to decision:

The incident occurred on South Spring Street, near the intersection of Walker Avenue, in the city of Greensboro. At that point Spring Street runs north and south, is thirty-four feet wide, paved with asphalt, with a steep downgrade going north. The pavement was wet. At the time of the accident, the defendant Bain, accompanied by Joe Williams, had driven his truck along the right side of the street past a driveway, had stopped and was backing the truck in the opposite direction with the apparent purpose of entering the driveway. In doing so, he ran over and killed James Wall, a boy about sixteen years old, employed in delivering groceries, who was approaching on a bicycle on that side of the street. The boy was instantly killed and bore marks on his body showing that the rear wheel of the truck had passed over him. The bicycle was caught under the rear axle of the truck and was mashed to pieces, requiring some considerable trouble in pulling it out, and groceries were scattered over the ground from the basket in which he had been carrying them for delivery.

There were skid marks made by the bicycle for twenty-nine feet before the collision. The indications were that the boy was traveling along Spring Street in the same direction as the truck had been traveling, and on his right side. He had room of twenty-four to twenty-five feet in which to pass the truck. For some distance the skid marks showed that the bicycle was skidding sideways—a wider skid near the truck. This skid mark started some eleven feet from the east curb, skidding toward the back of the truck and indicating that the brakes of the bicycle had been put on. The skid marks ended under the rear of the truck. "In other words, it was a straight line down to about 5 or 6 feet behind the truck and then it skewered (skewed) around sideways."

The evidence indicated that in order to carry the bushel basket of groceries, the boy had to hold it on the handlebars or on the frame of the bicycle with one hand while holding the handlebar with the other.

Several pictures of the scene were made by the officers before the body was removed and while the truck was standing in the position where it had been stopped, with the inner rear wheel some three or three and one-half feet from the curb, and the fore wheel around four or four and one-half feet from the curb. These were exhibited to the jury to illus-

trate the evidence of the witnesses. The indications were that the boy might have had an unobstructed view of the truck over the basket he was carrying.

Some details of the occurrence were furnished by the defendant Bain, and Joe Williams, who was occupying the seat in the cab of the truck with him, and these were given to the jury through the testimony of H. L. Purcell and J. H. Burton, police officers of the city of Greensboro, who investigated the occurrence immediately after it happened. Williams' statement was made in the presence of Bain. From these admissions, it appears that Bain had driven his car past the driveway above mentioned and stopped below it in order to back into it and deliver some oil; that Bain looked to see if anyone was coming from the rear on his side and Joe looked out his window on his side to see if anyone was coming; that they did not see anyone coming at all. Bain stated that he had the truck in reverse at the time he looked, and when he did not see anyone coming, he started backing up slowly and had backed three or four feet when he bumped over something that felt like he had run over a rock; that he immediately stopped the truck and Joe Williams got out on his side and said, "Carson, you have run over a boy."

Both Bain and Williams said they did not see a soul on the street at that time, or any automobile, or any living human being.

More formal matters of proof are not necessary to the statement.

At the close of the plaintiff's evidence, the defendant moved for judgment as of nonsuit upon the evidence, and the motion was allowed. The defendant introduced no evidence.

From the judgment, the plaintiff appealed, assigning error.

*Z. H. Howerton and Harry R. Stanley for plaintiff, appellant.*
*Sapp, Sapp & Atkinson for defendant, appellee.*

SEAWELL, J. The appeal presents two questions: Whether there was any evidence of negligence on the part of defendant to take the case to the jury, and whether the conduct of the boy who met his death in the accident was, as a matter of law, contributorily negligent.

There could be little dispute as to the principles of law involved in the decision of these questions. It is true, as suggested in defendant's brief, that what constitutes negligence is a matter of law; and this principle will be applied in examining plaintiff's evidence on a question of nonsuit. But there are other more searching formulæ to be applied before the court comes to a conclusion.

In passing upon the negligence of the defendant on a motion to nonsuit, it is elementary that the evidence must be taken in the light most favorable to the plaintiff and that plaintiff is entitled to all reasonable

inferences therefrom. *Heilig v. Insurance Co., ante,* 231; *Gorham v. Insurance Co.,* 214 N. C., 526, 200 S. E., 5; *Inge v. R. R.,* 192 N. C., 522, 135 S. E., 522. While the statute, C. S., 567, requires a consideration of the whole evidence, it is clear that only that part of the defendant's evidence which is favorable to the plaintiff can be taken into consideration, since, otherwise, the court would necessarily pass upon the weight of the evidence, the credibility of which rests solely with the jury. *Davidson v. Telegraph Co.,* 207 N. C., 790, 178 S. E., 603. Taking the case away from the jury, while a duty sometimes unavoidable, is always a delicate task, involving much more than a strong feeling that the plaintiff ought not to recover. The power of the court is limited to the ascertainment whether there is any evidence at all which has probative value in any or all of the facts and circumstances offered in the guise of proof. *Willis v. R. R.,* 122 N. C., 905, 908, 29 S. E., 941; *Gates v. Max,* 125 N. C., 139, 34 S. E., 266. It is not a matter of passing upon the weight of evidence when it has weight. That power is denied us. *Willis v. R. R., supra.* It is a matter of dropping the proffered proof into evenly poised balances to see whether it weighs against nothing. *Cox v. R. R.,* 123 N. C., 604, 31 S. E., 848, and cited cases. The result often brings a consequence not to be desired, sometimes not even consonant with our sense of justice, but when it is shocking to the conscience, the judges of the Superior Court have a remedy with which we are not entrusted. C. S., 591; *Anderson v. Holland,* 209 N. C., 746, 184 S. E., 511; *Brantley v. Collie,* 205 N. C., 229, 231, 171 S. E., 88.

It is amazing how many cases may be marshaled on either side of this difficult proposition, supposed to be on all fours with the case presented for decision. But the variations in factual situations are practically unlimited, and while these cases are often valuable as repeating and emphasizing general principles of law applicable to the subject, nevertheless, as precedents for the evaluation of the evidence in any particular case, for the most part, from the very nature of the thing, they speak with uncertain authority. It is the privilege of the Court to make its own appraisal of the instruments of proof in each case as the circumstances may demand, under the guidance of the principles by which its powers are defined and limited.

In the case at bar, the Court is of the opinion that there is evidence from which the jury might infer negligence on the part of the defendant.

No reasonable person would move along the highway in reverse for any length of time, and in the wrong traffic lane, as a preferable mode of travel. That would be negligence *per se.* But although the defendant had not undertaken such an unusual feat, and had not gone far,

he was, nevertheless, backing his truck along the street in a traffic lane devoted to travel in the opposite direction—an operation which involved a greater danger than ordinary travel, both because of the probability of oncoming traffic and the limited opportunity for outlook; and in protection of that movement, he must exercise ordinary care. To bring him within the protection of the rule of the ordinarily prudent man, that care should have been adequate to the danger involved. It is to be noted that the defendant might have turned into the driveway he intended to use by a forward movement, and the city ordinance required him to do so. Instead, he chose to drive completely past the driveway, stop and back up the street—a movement, the necessity of which is unexplained. Having chosen this mode of operation, his own statement is that he looked back up the street on his own side, and Joe Williams looked up on his side, and neither saw anyone coming; whereupon, he proceeded with the backward movement of the truck up the street.

The requirements of prudent operation are not necessarily satisfied when the defendant "looks" either preceding or during the operation of his car. It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen. In *Taulborg v. Andresen* (Neb.), 228 N. W., 528, 67 A. L. R., 642, this duty is expressed as follows: "It is his positive duty to look backward for approaching vehicles and to give them timely warning of his intention to back, when a reasonable necessity for it exists; and he must not only look backward when he commences his operation, but he must continue to look backward in order that he may not collide with or injure those lawfully using such street or highway. 42 C. J., 935; Blashfield, Cyc. Auto. Law, pp. 529-533; Berry, Auto., 4th Ed., secs. 235, 954; Huddy, Auto., p. 324; *Lee v. Donnelly,* 95 Vt., 121, 113 Atl., 542." *McManus v. Arnold Taxi Corp.,* 82 Calif. App., 215, 255 Pac., 755.

While the defendant states that neither of the occupants of the cab saw anyone approaching from up the street, the evidence, particularly that which is circumstantial and the fact that there was an almost immediate collision with the boy on the bicycle, raises a question to be dealt with by the jury whether the outlook satisfied the demands of prudence—whether it was too casual or not sufficiently sustained, and whether the view was partly obstructed by the body of the truck. The volume of traffic on Spring Street at any time is something that is left to conjecture. It is, however, a paved street in a populous city, and even if it were a highway in the country, traffic might be expected in the lane or part of the highway devoted to that purpose. In the case at bar it was unforeseen, rather than unforeseeable.

Since *Neal v. R. R.,* 126 N. C., 634, 36 S. E., 117—a case cited in our reports perhaps a hundred times—the Court has undertaken in proper cases to pass upon the conduct of the plaintiff as contributorily negligent when reasonable minds could draw only a single inference, and that unfavorable to him, from his own evidence and the aiding evidence of the defendant, considered in the light most favorable to the plaintiff. However, contributory negligence on the part of the plaintiff is an affirmative plea and the burden is upon the defendant to allege it and prove it. *Farris v. R. R.,* 151 N. C., 484, 66 S. E., 457; *Boney v. R. R.,* 155 N. C., 95, 108, 71 S. E., 87. The situation is directly the opposite of that presented in passing upon the negligence of the defendant, as to which the burden, both of allegation and proof, is upon the plaintiff. While the standard of conduct is the same, we apprehend, as a practical matter, that the Court might have more difficulty in finding that the evidence of the conduct of the plaintiff's intestate affirmatively establishes contributory negligence as a matter of law than it might have in finding that there is no evidence of negligence on the part of the defendant to take the case to the jury. See *Neal v. R. R., supra.* The danger of a too apt deliverance of the Court upon that point is obviated in some states by laws which prohibit the practice. 12 Am. Jur., 281, section 583.

In the case at bar, however, we do not feel that the situation affords embarrassment. The indications are that the victim of the accident was much nearer than the occupants of the truck supposed him to be when Bain began the backward movement, since according to his own statement, he felt the jar of the truck in running over the boy and bicycle almost immediately afterward. There was no eyewitness to the part James Wall played in the accident resulting in his death. His conduct must be deduced from circumstantial evidence and, as has often happened before, from the handwriting of destiny on the street. There is much discussion as to the meaning of these marks left by the bicycle on the pavement. The defendant reads them as signifying contributory negligence on the part of the victim of the accident; we are not satisfied that they may not as well be interpreted as indicating an effort on the part of the rider of the bicycle to escape the sudden peril into which he was thrown by the negligence of the defendant, in which case the law would not make nice distinctions as to the wisdom of his conduct. *Clark v. R. R.,* 109 N. C., 430, 14 S. E., 43; *Pridgen v. Produce Co.,* 199 N. C., 560, 155 S. E., 247; *Enos v. Norton* (Cal. App.), 292 Pac., 276; 38 Am. Jur., Negligence, ss. 77, 194.

For these and other reasons which might be assigned, we do not consider the aspects of the evidence upon which the defendant depends to sustain the nonsuit—that the boy was carrying and holding a basket on

the handlebars or frame of the bicycle while directing it with one hand, that he had a clear and unobstructed vision of the truck over the basket, and that he had an apparent avenue of escape—are sufficiently established as contributing proximate causes of the injury and death to bring the evidence within the single inference rule which would justify us in taking the case from the jury.

There was error in nonsuiting the case on either ground advanced, and the judgment to that effect is

Reversed.