Civil action for recovery of damages for alleged wrongful death, G.S., 28-173, and G.S., 28-174.
Plaintiff alleges in pertinent part, briefly stated, that on 14 December, 1943, his intestate, Robert David Henson, a Negro boy less than eight years of age, was killed when an International motor truck which was operated by defendant Arnold Wilson in hauling logs, as agent and servant of his co-defendants, the owners thereof, ran into said intestate as he was walking or standing on the embankment of a cut on a public road with high embankment on each side near Lincoln Park in Yancey County, North Carolina; that at the time defendant Wilson was familiar with the road and knew it to be narrow, with high embankment on each side and knew that small children who lived in the neighborhood along the road frequently used the road; and that at the time, and with such knowledge *Page 418 
defendant Wilson recklessly, carelessly and negligently operated said motor truck without due caution and circumspection, and without regard for the safety of persons on the road, and against the embankment on its left side of the road where plaintiff's intestate was standing or traveling, thereby causing his injury and death, etc.
Defendants in joint answer filed admit that at the time in question defendant Wilson was operating said motor truck in hauling logs as agent and servant of his co-defendants, but deny all allegations of negligence. And for further answer and defense, defendants set up their version of the occurrence and plead contributory negligence of plaintiff's intestate and of his parents in bar of recovery.
Plaintiff in reply denies the averments of the defendants in their further answer and defense, and pleads the doctrine of last clear chance.
The evidence offered upon the trial in Superior Court tends to show, in the light most favorable to plaintiff, these facts: The road, referred to as "the main road," on which plaintiff's intestate was killed, and on which the truck in question was traveling from the log yard at which it was loaded with logs, and leading by the colored Baptist Church, passes in the vicinity of the house of Zeb Henson, the father of Robert David Henson, and intersects with a path or road on the left side leading to the Henson house. From that point the main road continues on steep grade through a cut. The embankment on the left side gradually rises in height above the roadbed to about four feet at the point below which the body of Robert David Henson was found. Through this cut the road is very narrow — from seven to eight feet in width. The surface of the road slopes to the left. The surface on the right side is eighteen inches higher than that on the left. From the point of intersection with the Henson path or road toward the point where Robert David Henson's body was found the road is straight, the distance being sixty to seventy-five feet, with nothing to obstruct the view. At that point there is an oak tree on the left side of the road with root ends extending out of the embankment of the cut. Near-by there is another tree. There is a wire fence on top of the embankment. There is practically no space between the wire fence and the edge of the cut.
The bed of the truck in question is about seven feet wide, and wider than the cab. And in respect thereto, the helper on the truck as witness for defendants, testified, "This road is what might be called a cut. A high bank on the right and bank on the left. That road is just wide enough for one motor vehicle to travel at a time. It's so narrow we had to raise the mirror on the left side of the truck. . . . In traveling over this road we went in same direction each trip. The wheels on our vehicle cut right along the foot of the embankment. The road is lower on the left than on the right. With a load of logs like we had that trip, the *Page 419 
truck pitched towards the left of the road. The sides of our truck and logs had hit the roots where they were sticking out, that is, the roots of the tree where Robert David Henson was found." Also there was evidence that the body of Robert David Henson was found "lying up and down the route which the truck had made," on the left side of the road "under the tree with his head a little up the hill," and that a piece of his overalls and some of his hair were seen on the roots of the tree. Furthermore, all the evidence tends to show that the truck was going uphill, at slow speed not over five miles per hour, described by defendant Wilson as "traveling in bulldog and dual gear — 4 to 5 miles per hour." Plaintiff's witness put the speed at from 2 to 5 miles per hour. And witness for defendants testified: "At the speed we were going, the load on the truck and the condition of the road, that truck could have been stopped suddenly."
Plaintiff's witness, Lester Young, gave a narrative, substantially as follows: "I was at home on the 14th day of December, 1943. My home is about as near to the place where Robert David Henson was killed as from here across the street. I saw the truck driven by Arnold Wilson coming up the road. I saw it before it got to the curve of the road, below where the little boy was killed. I was sitting at the window . . . and the truck came and two little boys were running along the side of it and one of them caught the truck; that was the least boy . . . not Robert David Henson. Robert David Henson ran on by the truck to the bars. He ran around the big oak standing at the bars and got between another tree there and the big oak. He was standing there and the truck hadn't yet got to him. The truck pulled on pretty close to him and I heard my kids holler to run, and turned my head . . . and when I looked around Robert David was gone . . ." Then in answer to question, "Tell us just how he was standing at the time you saw him," the witness said, "It looked like it was from here up . . . from his waist up was above the top of the bank." And same witness continuing: "Robert David was on the left side of the road, his left side and driver's left side. There's a barbed wire fence along the edge of the embankment. There is no kind of a path between the fence and the embankment. . . . The little boy was still standing there when the cab and driver were against him. It looked like you could almost touch the little boy. Then I turned my head . . . I looked back and didn't see him . . . I heard some screams. I saw the truck pulling on up the road. No other person or vehicle passed by this point from the time I saw the boy standing on the side of the bank until I turned my head back . . ." Then same witness, continuing on cross-examination, said: "The last time I saw the little boy he was standing right about middleways of the two oak trees. He was not on top of the bank. The fence was between Robert David Henson *Page 420 
and me. And the fence is right along the top of the bank . . . The trees stood right on the edge of the bank, and the roots stick out at the point where he got killed . . . I saw the truck when it pulled up where the little boy was standing and when it got on up there . . . I saw the little boy standing there on the bank before the truck got to him . . . The last time I saw Robert David, he was standing on the embankment, he was between the top edges of the two banks. I could see from his waist up; he might have been down in the road . . . I couldn't tell whether he was down in the road or hunkering down on the bank. I could not tell whether he was in the roadbed or where. When I saw him the truck was coming up in his direction."
There is also evidence that Robert David Henson was "around seven years old" and about three feet tall.
Defendants on the other hand offered evidence tending to show an entirely different version as to how Robert David Henson came to his death.
Motion of defendants for judgment as of nonsuit at close of plaintiff's evidence was overruled, but like motion at close of all the evidence was allowed, and in accordance therewith judgment was signed.
Plaintiff appeals therefrom to Supreme Court and assigns error.
It is a general rule of law, even in the absence of statutory requirements, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. This duty requires that the operator must be reasonably vigilant, and that he must anticipate and expect the presence of others. Hobbs v. Coach Co., ante, 323,34 S.E.2d 211, and cases cited.
Moreover, it is said in Wall v. Bain, 222 N.C. 375,23 S.E.2d 330, "It is the duty of the driver of a motor vehicle not merely to look, but to keep an outlook in the direction of travel, and he is held to the duty of seeing what he ought to have seen."
In the light of these principles applied to the evidence in the case in hand, we are of opinion and hold that the evidence taken in the light most favorable to plaintiff, is of sufficient probative force to take the case to the jury. The evidence is susceptible of findings by the jury: (1) *Page 421 
That plaintiff's intestate, Robert David Henson, was on the side of the left side embankment of the road cut, as the truck operated by defendant Wilson approached him; (2) that if he were there, the operator of the truck saw him, or by the exercise of ordinary care could and should have seen him; (3) that the operator of the truck had knowledge of the narrowness of the road and of the uneven surface of the road and its effect upon the loaded truck in relation to the left side embankment; and (4) that collision with, and injury to a child on such left side embankment was likely to ensue. If the jury should so find the facts to have been, from the evidence, and by its greater weight, it was the duty of the operator of the truck to exercise ordinary care to avoid collision with the child, and his failure to do so would be negligence.
On the other hand, defendants controvert the evidence of the plaintiff. That raises an issue of fact which alone the jury may decide. And we here express no opinion upon the weight of evidence. That is for the jury.
The judgment below is
Reversed.