BARBARA McDOWELL WHITE v. HENRY BERRY CASON, THE CITY OF WINSTON-SALEM AND NORFOLK & WESTERN RAILWAY COMPANY.

(Filed 14 January, 1960.)

1. **Automobiles § 43: Municipal Corporations § 12: Railroads § 6—**
   Evidence tending to show that the driver of the car, his attention diverted by the laughing and talking of his passengers, in which he was participating, ran into the abutment of a railroad overpass in the center of the street, that the abutment had black and white stripes painted on it, had reflectors on it, and was readily visible a distance of some two hundred feet etc. *is held* to disclose that the negligence of the driver was the sole proximate cause of the accident, and nonsuit was properly entered as to the defendant municipality and the defendant railroad.

2. **Automobiles § 7—**
   The driver of a motor vehicle is under the duty not merely to look but to keep a lookout in the direction of travel, and he is negligent in failing to see that which he could have seen and ought to have seen in the exercise of that degree of care required of him by law.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Johnston, J.,* 13 July Term, 1959, of FORSYTH.

This is a civil action to recover for personal injuries to plaintiff, alleged to have been caused by the negligence of the defendants.

The facts necessary to an understanding of the disposition of this case are as follows:

The plaintiff, a young woman 23 years of age, was riding as a guest in the automobile owned and operated by Henry Berry Cason on 31 August 1958, at approximately 7:52 p.m. on Northwest Boulevard in the City of Winston-Salem, North Carolina. The defendant Norfolk & Western Railway Company had constructed and maintained an overpass across Northwest Boulevard with the consent and approval of the defendant City of Winston-Salem. In the center of said Boulevard there were heavy steel and concrete pillars, 3-½ feet wide, supporting the railroad bridge. The unobstructed area for passage of motor vehicles on either side of the center supports is 15.3 feet. The 1951 Ford automobile in which plaintiff was riding as a passenger approached the overpass from the west, traveling in an easterly direction. Plaintiff alleges that the defendant Cason crossed the white center line on Northwest Boulevard as the vehicle approached the bridge abutment in the middle of the street.

Plaintiff alleges that the defendant Cason was negligent in operating the Ford automobile on the left-hand side of the highway, or towards the left-hand side, in violation of G.S. 20-146, and in oper-

ating the vehicle without keeping a proper lookout and without observing the bridge abutment in the center of Northwest Boulevard. She alleges further that the defendant Cason failed to keep the automobile under proper control.

The plaintiff's evidence tends to show that the defendant Henry Berry Cason, the driver of the automobile involved, stopped for a red light at the intersection of Patterson Avenue and Northwest Boulevard, then made a left turn into Northwest Boulevard and continued in an easterly direction on said Boulevard. There were seven people in the car, four adults and three children. The defendant Cason, testifying as a witness for the plaintiff, said: "When we left that light we were all laughing and talking, and somewhere near the bridge abutment someone hollered in the car, I don't know who it was. When they hollered I applied my brakes on my car and the left front wheel locked up on it, which it had give trouble before, and that is about all that I recall of it. I don't believe I could say whether or not I saw the bridge abutment at any time before the accident, because I am not sure whether I did or didn't. I did see the obstruction in the center of the street an instant before I hit the abutment * * *. Before I hit the abutment in the center of the street I was running about 15 to 20 miles an hour."

On cross-examination this witness testified: "I told Mr. Randolph (plaintiff's attorney) that as all of us came up to the crossing there we were laughing and talking. Everybody in the car was carrying on, in conversation and laughing and talking, including me."

The evidence further tends to show that there was a street light burning on the west side of the overhead bridge at the time of the accident. Witnesses placed this light from 30 to 76 feet west of the bridge. There was another street light 220 feet west of the bridge. There were diagonal black and white stripes painted on the pillars supporting the bridge. There were three reflectors on each side of the bridge. These reflectors were on the three piers supporting the bridge. After the accident, the reflector pad remained on the center bridge abutment, but most of the reflector buttons were gone. That is, some of the reflectors were knocked out of the reflector pad; the broken parts of the buttons or lights were all right down in front of the defendant Cason's car. The box that held the reflector buttons was approximately 15 inches square, and it was located about three feet above the pavement.

When the investigating officers arrived at the scene of the accident they found the defendant Cason's car sitting against the bridge abutment, totally demolished. The right front of the automobile struck the abutment just about six inches to the right of the center of the

automobile. Officer Foreman testified: "As we approached the scene in the right-hand lane going east, which is the way we came upon the scene and also the way Mr. Cason was going, we could see the pier and the abutment and the car up against the pier for a distance of approximately 250 to 300 feet. * * * As I approach the trestle from back west going east, the way this car was going, I can see the abutment over on the right-hand side probably another 50 feet further than I can see the center one. You can see the one on the right-hand side back about 350 feet before you get to it; that one has black and white stripes on it, just like the one in the center * * *. The headlights of a vehicle approaching on the right-hand side of the highway would pick up the reflection of the reflectors in the center post at least 200 feet back. The headlights of an approaching vehicle would pick up the center post a good way back, before he came all the way out of the curve; he wouldn't have to be all the way out of it to pick up the lights on it." This witness further testified that at a point 100 to 150 feet away from the overhead bridge you could read the lettering on the trestle.

Officer Foreman also testified: "There at the hospital we asked Mr. Cason what had happened, why he hit the abutment. He said he didn't know what caused it; that he knew the abutment was there in the center of the street, but he didn't know what caused the accident. Mr. Cason said he had traveled over there quite frequently." (Mr. Cason, while testifying for plaintiff, denied making the statement that he was acquainted with the street at the point where the accident occurred.)

Officer Cottrell testified: "I was present at a conversation between Mr. Foreman (and) the defendant Henry Berry Cason * * *. We asked Mr. Cason if he knew what caused the accident. He said he didn't know, but he knew the railroad bridge was there."

Otis A. Jones, a surveyor, testified: "I do not believe you can see the bridge from a distance of 350 to 300 feet proceeding eastwardly in the right-hand lane * * *. In my estimation you have 180 feet of unobstructed vision of the pier in the middle as you proceed eastwardly towards the abutment, but you have to get a little closer to get a view of all the piers. You could see the center pier for a distance of about 180 feet."

At the close of plaintiff's evidence the defendant Henry Berry Cason moved for judgment as of nonsuit. The motion was denied. The defendants City of Winston-Salem and Norfolk & Western Railway Company moved for judgment as of nonsuit, and the motion was allowed. Whereupon, the plaintiff took a voluntary nonsuit as to the

defendant Henry Berry Cason. Judgment as of nonsuit was entered, and the plaintiff appeals, assigning error.

*Clyde C. Randolph for plaintiff*
*Womble, Carlyle, Sandridge & Rice, By: H. Grady Barnhill, Jr., for defendant, City of Winston-Salem.*
*Craige, Parker, Brawley, Lucas & Hendrix, for defendant, Norfolk & Western Railway Company.*

DENNY, J.   A careful consideration of all the evidence adduced in the trial below leads us to the conclusion that the negligence of the defendant Cason, the driver of the automobile involved in the accident, was the sole proximate cause of the collision and the consequent injuries to the plaintiff. *Montgomery v. Blades,* 222 N.C. 463, 23 S.E. 2d 844; *Baker v. R. R.,* 205 N.C. 329, 171 S.E. 342.

In *Baker v. R. R., supra,* under a factual situation similar to that in the present case, the driver of the car fell asleep and ran his car into the center column of an overhead railroad bridge, injuring himself and killing his invited guest passenger, Heber C. Baker. Actions were brought against the defendant railroad for the wrongful death of Baker and for the driver's personal injuries. The cases were consolidated for trial, and judgment as of nonsuit was entered. The plaintiffs appealed.

*Stacy, C. J.,* speaking for the Court, said: "That the driver of the automobile, who fell asleep and ran his car into the center post, injuring himself and killing his companion, cannot recover is too plain for debate. * * * He was not driving along a street which abruptly terminated in a river without barricade or lights * * *. Nor was he unfamiliar with the road. There are none so blind as those who have eyes and will not see. * * *

"It is equally clear, we think, that the negligence of the driver was the sole, proximate cause of plaintiff's intestate's death. (Citations omitted)"

The writer of the opinion quoted with approval from the case of *Becker v. Ill. Cent. R. Co.,* 147 So. 378, in which, among other things, it was said: " 'It must be conceded that, if there had been no center pier there could have been no collision therewith, but it does not follow that, because there was a pier, its presence can be said to have been the proximate cause of the collision. * * *' "

If it be conceded that the corporate defendants were negligent in the construction and maintenance of the supporting pillars in the center of Northwest Boulevard, which is not so decided, we hold that such negligence was passive and was insulated by the intervention

of the active negligence of Henry Berry Cason, the driver of the automobile in which the plaintiff was riding at the time of the collision. *Montgomery v. Blades, supra; Haney v. Lincolnton,* 207 N.C. 282, 176 S.E. 573; *Baker v. R. R., supra; Hinnant v. R. R.,* 202 N.C. 489, 163 S.E. 555; *Herman v. R. R.,* 197 N.C. 718, 150 S.E. 361.

We think the plaintiff's evidence clearly establishes the fact that the defendant Cason was negligent in the operation of his car in that he failed to see that which he could have seen and ought to have seen, and doubtless would have seen, if he had been exercising that degree of care required of him by law in the operation of his automobile. *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330.

In the last cited case *Seawell, J.,* in speaking for the Court, said: "It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

Upon all the evidence, we think it is manifest that the alleged negligence of the corporate defendants was not in law a proximate cause of plaintiff's injuries. *Herman v. R. R., supra.*

The judgment below is

Affirmed.

HIGGINS, J., took no part in the consideration or decision of this case.