PEGGY LOUISE CLARKE v. RONALD EUGENE HOLMAN AND HUGHEY FRED TOWNSEND

No. 355

(Filed 30 October 1968)

**1. Trial § 21— motion to nonsuit — consideration of evidence**

On motion to nonsuit, all the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom.

**2. Trial § 21— motion to nonsuit — consideration of evidence**

On motion to nonsuit, contradictions and discrepancies are resolved in plaintiff's favor, and only that part of defendant's evidence which is favorable to plaintiff may be considered.

**3. Negligence § 26— actions based on negligence — burden of proof**

To recover damages for personal injury resulting from alleged actionable negligence, plaintiff must show (1) that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which defendant owed to plaintiff under the circumstances in which they were placed, and (2) that such negligent breach of duty was the proximate cause of the injury.

**4. Negligence § 9— foreseeability — proximate cause**

Reasonable foreseeability is an essential element of proximate cause.

**5. Automobiles § 9— G.S. 20-154 — turning and turn signals**

G.S. 20-154 requires a motorist intending to turn from a direct line (1) to see that the movement can be made in safety, and (2) to give the required signal when the operation of any other vehicle may be affected.

**6. Automobiles § 9— G.S. 20-154 — left turn**

G.S. 20-154 does not preclude a left turn unless the circumstances are absolutely free from danger, but only requires a motorist to exercise reasonable care under existing conditions to ascertain that such movement can be made with safety.

**7. Automobiles § 9— duty to give turn signal**

When the surrounding circumstances afford a motorist reasonable grounds to conclude that his left turn might affect the operation of another vehicle, the duty to give the statutory signal is imposed upon him.

**8. Automobiles § 9— duties of motorist making a left turn**

Where the vehicles of plaintiff and defendant were approaching each other on the highway and defendant intended to turn left across plaintiff's lane of travel, defendant owed plaintiff the duty (1) to see that such movement could be made in safety and then (2) to give, during the last 200 feet traveled prior to stopping or making the turn, a plainly visible signal of his intention to turn. G.S. 20-154.

**9. Automobiles § 58— failure to give left-turn signal — proximate cause**

Where defendant stopped in his lane of travel preparatory to making a left turn across plaintiff's lane of travel when plaintiff's vehicle was 1700 feet away and the codefendant was nowhere in sight, and defendant's truck was struck from the rear by the codefendant's vehicle, which then struck plaintiff's oncoming vehicle, defendant's failure to give a left-turn signal during the last 200 feet traveled before stopping was not a proximate cause of the subsequent collision, and defendant was not required to maintain a signal after stopping, the codefendant's negligence in failing to keep a proper lookout being the sole proximate cause of the collision and the resulting injury to plaintiff.

**10. Automobiles § 9— left-turn signal**

One is not required to give a signal to a motorist who has not yet appeared on the horizon.

APPEAL by plaintiff from decision of the Court of Appeals reported in 1 N.C. App. 176.

This is a civil action to recover damages for personal injuries allegedly inflicted by the joint and concurrent negligence of defendants. The jury found both defendants negligent and awarded damages of $20,000. Townsend appealed to the Court of Appeals assigning as error the failure of the trial court to allow his motion for nonsuit at the close of all the evidence. The Court of Appeals reversed the trial court and nonsuited the case against Townsend, with Britt, J., dissenting. Plaintiff thereupon appealed as of right to the Supreme Court. Defendant Holman did not appeal.

*West & Groome, Attorneys for plaintiff appellant.*

*Smathers and Hufstader; Larry W. Pitts, Attorneys for defendant appellee, Hughey Fred Townsend.*

HUSKINS, J.

The sole question presented for decision is whether or not the Court of Appeals erred in allowing Townsend's motion for nonsuit.

On motion to nonsuit, all the evidence which tends to support plaintiff's claim must be taken as true and considered in its light

most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom. *Homes, Inc. v. Bryson,* 273 N.C. 84, 159 S.E. 2d 329; *Insurance Co. v. Storage Co.,* 267 N.C. 679, 149 S.E. 2d 27. Contradictions and discrepancies are resolved in plaintiff's favor. *Watt v. Crews,* 261 N.C. 143, 134 S.E. 2d 199; *Nixon v. Nixon,* 260 N.C. 251, 132 S.E. 2d 590; *Smith v. Corsat,* 260 N.C. 92, 131 S.E. 2d 894; *Raper v. McCrory-McLellan Corp.,* 259 N.C. 199, 130 S.E. 2d 281. Defendant's evidence which contradicts that of the plaintiff, or tends to show a different state of facts, is ignored. *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. Only that part of defendant's evidence which is favorable to plaintiff can be considered. *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330.

The evidence, when subjected to these rules, would permit a jury to find the following facts:

1. The Connelly Springs Road runs generally north-south from Lenoir to Connelly Springs. Six miles south of Lenoir it is intersected from the west by Rural Paved Road 1136 forming a "T" intersection. Looking south from that intersection, the Connelly Springs Road is straight and level for 300 to 528 feet. Looking north it is straight and level for one-half mile. Its pavement is 20 feet wide with a painted center line and a four-foot shoulder on each side. The maximum lawful speed for vehicular travel on this road is 55 miles per hour.

2. On 4 May 1966, during daylight hours with clear weather and dry pavement, defendant Townsend was driving north on the Connelly Springs Road intending to turn left on Rural Paved Road 1136. Upon reaching that intersection, he was unable to make a left turn due to southbound traffic on Connelly Springs Road. He therefore stopped to allow the oncoming traffic to pass before turning left himself. He had been stopped there for 30 seconds or more, possibly 45 seconds, when a vehicle driven by defendant Holman struck him from the rear.

3. The defendant Holman was driving a Ford pickup truck north on the Connelly Springs Road and came upon the stopped Townsend vehicle. He had not previously seen the Townsend vehicle that day and did not see it on this occasion until he was within 97 feet of it. He could have seen it when he rounded a curve at least 300 feet away, and his failure to do so is unexplained. Nothing obstructed his vision. When he did see it, he was then too close to stop. He skidded 57 feet, struck the Townsend vehicle in the left rear, then crossed into the southbound lane and struck the vehicle

of plaintiff Clarke, finally coming to rest after striking another vehicle which was following plaintiff. Had Holman seen the Townsend vehicle when he was 150 feet away from it, he could have stopped in time to avoid a collision.

4.  Plaintiff Clarke was driving south on Connelly Springs Road at approximately 45 miles per hour followed by a 1957 Ford driven by Cecil Dennis Gragg. Several other vehicles were proceeding south in front of her. When she was about 1700 feet north of the "T" intersection at Rural Paved Road 1136, she saw the Townsend vehicle stopped there in the northbound traffic lane of Connelly Springs Road. No signals, mechanical or otherwise, were being given by Townsend. His pickup truck was sitting "dead still" in the road. When plaintiff's vehicle arrived at the intersection, it was struck by the Holman vehicle which she had not seen prior to that moment.

5.  As a result of her collision with the Holman vehicle, plaintiff was seriously injured.

Although defendant Townsend testified that his vehicle was not equipped with mechanical turn signals and that he gave a hand signal during the last 200 feet traveled indicating his intention to turn left at Rural Paved Road 1136, we do not consider this evidence on motion to nonsuit but take the evidence in its light most favorable to plaintiff which tends to show that no signal of any kind was given before stopping or maintained thereafter while waiting to complete a left turn.

Plaintiff charges Townsend with negligence (1) in failing to signal his intention to stop, (2) in failing to give a signal of his intention to make a left turn, and (3) in failing to maintain such signal until the left turn was completed. Townsend contends that he was not required to maintain any signal after stopping and says that failure, if he did fail, to give a signal before stopping was not a proximate cause of the collision which later occurred.

[3, 4]   Negligence has been defined as "the failure to exercise proper care in the performance of some legal duty which defendant owes the injured party under the circumstances in which they are placed." 6 Strong's N. C. Index 2nd, Negligence, Sec. 1. To be actionable, however, negligence must be the proximate cause of injury to another. *McGaha v. Smoky Mountain Stages, Inc.*, 263 N.C. 769, 140 S.E. 2d 355; *Reason v. Sewing Machine Co.*, 259 N.C. 264, 130 S.E. 2d 397; *Kientz v. Carlton*, 245 N.C. 236, 96 S.E. 2d 14. Thus, in an action to recover damages for personal injury resulting from alleged actionable negligence, such as this case, the plaintiff must show: "(1) That there has been a failure on the part of defendant

to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff under the circumstances in which they were placed; and (2) That such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed." *Luttrell v. Mineral Co.*, 220 N.C. 782, 789, 18 S.E. 2d 412, 416. Reasonable foreseeability is an essential element of proximate cause, and if the injury complained of is not reasonably foreseeable by the party charged, in the exercise of due care, he is not liable. "Foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." *Osborne v. Coal Co.*, 207 N.C. 545, 546, 177 S.E. 796, 797.

G.S. 20-154 provides in pertinent part that the driver of any vehicle upon a highway "before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, . . . and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. . . . All hand and arm signals shall be given from the left side of the vehicle and all signals shall be maintained or given continuously for the last one hundred feet traveled prior to stopping or making a turn. Provided, that in all areas where the speed limit is 45 miles per hour or higher and the operator intends to turn from a direct line of travel, a signal of intention to turn from a direct line of travel shall be given continuously during the last 200 feet traveled before turning; and provided further that the violation of this section shall not constitute negligence per se." This statute further provides that, absent mechanical signals, a left turn signal shall be given by extending the hand and arm from and beyond the left side of the vehicle in a horizontal position, forefinger pointing.

[5-7]　This safety statute requires a motorist intending to turn from a direct line (1) to see that the movement can be made in safety, and (2) to give the required signal *when the operation of any other vehicle may be affected. Tart v. Register,* 257 N.C. 161, 125 S.E. 2d 754; *Farmers Oil Co. v. Miller,* 264 N.C. 101, 141 S.E. 2d 41. The first requirement does not mean that a motorist may not make a left turn unless the circumstances are absolutely free from danger. It means that a motorist must exercise reasonable care under existing

conditions to ascertain that such movement can be made with safety. *Cooley v. Baker,* 231 N.C. 533, 58 S.E. 2d 115; *White v. Lacey,* 245 N.C. 364, 96 S.E. 2d 1; *Williams v. Tucker,* 259 N.C. 214, 130 S.E. 2d 306; *Farmers Oil Co. v. Miller, supra.* Infallibility is not required. *McNamara v. Outlaw,* 262 N.C. 612, 138 S.E. 2d 287. Furthermore, the duty to give a signal does not arise unless the operation of some other vehicle may be affected by such movement. When the surrounding circumstances afford him reasonable grounds to conclude that the left turn might affect the operation of another vehicle, then the duty to give the statutory signal is imposed upon him. *Blanton v. Carolina Dairy, Inc.,* 238 N.C. 382, 77 S.E. 2d 922.

[8, 9] Plaintiff Clarke and defendant Townsend were meeting each other on Connelly Springs Road. Townsend intended to turn left across plaintiff's lane of travel. Under these circumstances, Townsend owed plaintiff the duty (1) to see that such movement could be made in safety and then (2) to give, during the last 200 feet traveled *prior to stopping or making the turn,* a plainly visible signal of his intention to turn. G.S. 20-154; *Fleming v. Drye,* 253 N.C. 545, 117 S.E. 2d 416; *King v. Sloan,* 261 N.C. 562, 135 S.E. 2d 556. The first requirement was met when he stopped in his northbound lane to await the time when such movement could be made in safety. Failure to meet the second requirement was of no legal significance under the facts of this case. He stopped when plaintiff was 1700 feet away and defendant Holman was nowhere in sight. He never turned left. He never entered plaintiff's lane of traffic. Neither plaintiff's vehicle nor Holman's vehicle were in any wise affected by his stopping or standing without giving the left turn signal. Holman later came upon the Townsend vehicle lawfully stopped on the highway and crashed into it because he was not keeping a lookout in his direction of travel. It was encumbent upon Holman to keep a reasonably careful lookout in order to avoid collision with persons and vehicles upon the highway. This duty required Holman to be reasonably vigilant and to anticipate and expect the presence of others. *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211; *Henson v. Wilson,* 225 N.C. 417, 35 S.E. 2d 245. "It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen." *Wall v. Bain,* 222 N.C. 375, 379, 23 S.E. 2d 330, 333. Holman's negligence in this respect was the sole proximate cause of the collision and the resulting injury to plaintiff. No other permissible inference of causation arises on the facts of this case. Holman did nothing whatever to avert a collision with the Townsend vehicle until it was too late. "This being so, the evidence war-

rants the inference that there was no causal connection whatever between the failure of the plaintiff to give a hand signal and the subsequent collision. The omission to perform a duty cannot constitute one of the proximate causes of an accident unless the doing of the omitted duty would have prevented the accident. 38 Am. Jur., Negligence, Section 54; 65 C.J.S., Negligence, Section 106." *Cozart v. Hudson,* 239 N.C. 279, 284, 78 S.E. 2d 881, 884.

[9, 10] It is sheer speculation to say that Holman might have seen an extended arm and hand with forefinger pointing when he didn't see an object the size of a pickup truck. Furthermore, one is not required to give a signal to a motorist who has not yet appeared on the horizon. In this case, such signal by Townsend for the last 200 feet traveled *before stopping* could not have affected Holman, and G.S. 20-154 does not require such signal to be maintained *after stopping.* While the facts and circumstances in a proper case may require a motorist in the exercise of due care to maintain a left turn signal after stopping and until the turn is executed, such was not required by the facts and circumstances revealed by the evidence here.

Plaintiff having failed to show any actionable negligence on the part of the defendant Townsend, the decision of the Court of Appeals is

Affirmed.