CRADDOCK *v.* LOVING AND CO.

## H. R. CRADDOCK v. T. A. LOVING AND COMPANY

### No. 691SC336

### (Filed 13 August 1969)

**1. Trial § 21— motion for nonsuit — consideration of evidence**

On motion for nonsuit at the close of all the evidence, all of the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom.

**2. Negligence § 29— allowing timber from dismantled bridge to remain in water**

Plaintiff's evidence *is held* sufficient to be submitted to the jury on the issue of defendant's negligence in allowing timber from a bridge dismantled by defendant to remain in the water and cause severe damage to plaintiff's fishing nets during a storm.

**3. Negligence § 37— instructions — damage to fishing nets by floating timber from dismantled bridge**

In this action for damages to plaintiff's fishing nets allegedly caused by defendant's negligence in allowing timber from a bridge dismantled by defendant to remain in the water, the trial court erred in instructing the jury to the effect that plaintiff contended that defendant was under contract with the State to dismantle the bridge without leaving any of the timber floating in the water, since plaintiff's action is based on common law negligence and the jury may have based its verdict upon a belief that defendant had a strict contractual duty to retrieve any timber which fell into the water rather than upon negligence and proximate cause.

APPEAL by defendant from *Parker, J.,* January 1969 Session, Superior Court of DARE.

This action was instituted by plaintiff to recover damages, including loss of profits, resulting from damage to plaintiff's fishing nets allegedly caused by wood and timber negligently allowed to remain in the water by defendant in the dismantling of an old wooden bridge which spanned the Currituck Sound from Point Harbor to the Outer Banks.

Plaintiff set two "sets" of pound nets along the southern shore of the Albemarle Sound in the early part of September 1966. The nets were between eight and ten miles almost due south of the bridge site. Between the bridge site and the nets was open, unobstructed water. During the summer and fall, defendant, pursuant to a contract with the State Highway Department, was engaged in dismantling the bridge.

From time to time during the fall of 1966, plaintiff discovered pieces of wood and timber in his nets. Most of these he removed

CRADDOCK v. LOVING AND CO.

while fishing his nets with only slight damage resulting to the nets. Prior to 26 November 1966, a storm of three or four days duration occurred. The storm carried winds from the northeast of 40 miles per hour. After the storm, plaintiff found his nets littered with timber similar to that taken from the bridge. He had taken one set consisting of three nets from the water before the storm. After the storm, he took up the other set, consisting of seven nets. Plaintiff's evidence tended to show that the set removed after the storm was severely damaged by the wood and timber and of little, if any, value.

At the conclusion of all the evidence, defendant moved for a judgment as of involuntary nonsuit, which motion was denied. The issues submitted to the jury were answered in favor of the plaintiff. From judgment entered thereon, defendant appealed.

*Wilkinson & Vosburgh by John A. Wilkinson for plaintiff appellee.*

*Rodman & Rodman by Thomas E. Archie for defendant appellant.*

MORRIS, J.

The defendant on appeal relies primarily on two assignments of error: Failure of the court to sustain its motion for judgment as of nonsuit at the close of all the evidence and prejudicial error in the charge.

[1] In considering whether defendant's motion for nonsuit at the close of all the evidence should be granted, all of the evidence which tends to support plaintiff's claim must be taken as true and considered in the light most favorable to plaintiff, giving him the benefit of every reasonable inference which may legitimately be drawn therefrom, *Clarke v. Holman*, 274 N.C. 425, 163 S.E. 2d 783, because the jury may give more weight to the plaintiff's evidence and may find according to plaintiff's evidence. *The Geltman Corporation v. Neisler Mills, Inc.*, 1 N.C. App. 627, 162 S.E. 2d 99.

[2] The evidence, when subjected to these rules tends to show that all of the wooden material in the bridge was creosote material except the handrail; that most of the material from the bridge was loaded by cranes on barges as the bridge was dismantled; that several operations were going on at the same time; that pilings were being pulled from the sound at the same time the decking was being removed, the decking was creosoted 2 by 10 spiked together and 3 by 4 creosoted deck board. The stringers were 6 by 16, approxi-

mately 19 feet in length. The caps were 12 by 12, approximately 21 feet in length. The pilings were creosoted timber piling. Timber and debris was seen washed up all along the shore in the area of plaintiff's nets after the November storm. The timber was thickly scattered up and down the shore for about 5 or 6 miles. It ranged in size from small to large — some 3 by 10, some 6 by 6, some 12 by 12 around 21 or 22 feet long. The material was black "like it might have been painted with something black, creosote, or something of that nature." Two pieces of 12 by 12 by 21 with bolts in them were taken from the nets. These were similar to the material in the bridge. Quite a bit of the material was seen floating in the sound. During the dismantling process, witnesses observed defendant's workmen "throwing" timber into the water and observed timber "falling" into the water. During dismantling operations debris of sizes varying from two feet to ten feet was seen floating around the bridge. Quite a few pieces of "good material" went "overboard". Part of it was retrieved but all of it was not. There was a boat there to pick it up, and some of it was picked up. Some was left that got away. Defendant was quite anxious to get through with the job and was on the workers "quite a bit to move faster". The job ran thirteen days overtime, and the superintendent was "chewed out" about it. It cost the company $900. According to the superintendent, if the timbers in the nets "weren't mine they were just exactly like mine."

We are of the opinion that the motion for judgment as of involuntary nonsuit was properly overruled and the question of negligence of defendant properly submitted to the jury. This assignment of error is overruled.

[3]   Defendant contends that prejudicial error was committed by the court in its charge to the jury. The portions of the charge assigned as error are:

"[I]n that under the terms of the contract they were supposed to take down and demolish and remove this bridge without allowing the various parts of the structure to fall into the water, and float about, or move from place to place by reason of the tides, the winds, or what-not,".

"The plaintiff says and contends that the defendant had a contractual liability with and to the State of North Carolina, that is, the defendant was under contract to take this bridge down, and to see that none of the timbers fell in the water without being retrieved; that they were to remove this old bridge entirely from Currituck Sound, without allowing any of the timbers to get away, or affect anyone's property, lawfully working

in or operating upon the waters of Currituck Sound, and any other adjacent waters that might be affected thereby, and that the defendant failed to do so;".

"The plaintiff says and contends that it was negligence on the part of the defendant's employees in allowing its material to float freely in the Sound, and that if they had followed the terms of the contract, and they had exercised due care and diligence in removing this material from the dismantling process that the damage to his nets would not have occurred, that is, this negligence on the part of the defendant, in removing this material, and allowing it to fall into the water, was the proximate cause, was the cause without which the damage to the nets of the plaintiff would not have occurred;".

"The court instructs you that if the plaintiff, who has the burden of proof on this issue, has satisfied you from the evidence, and by its greater weight, that the defendant was negligent, as that term has been defined to you by the court, in dismantling the wooden structure over the Currituck Sound, from Point Harbor, over to the Outer Banks, in that the defendant .failed to retrieve, or the defendant allowed certain portions of this structure being demolished to fall into the waters of Currituck Sound, and failed to retrieve the same from that Sound, and the plaintiff has further satisfied you from the evidence, and by its greater weight, that these materials came in contact with the nets of the plaintiff, and that the same materials was — caused damage, and that the negligence on the part of the defendant, T. A. Loving and Company, was the proximate cause of such injury and damage to the nets belonging to the plaintiff, then it would be your duty to answer the first issue 'Yes.' "

The position of defendant is well taken. Plaintiff's action is bottomed on common law negligence. There was no contract between defendant and plaintiff, nor has plaintiff contended that defendant had any contractual duty. We think the court's instructions with respect to defendant's duty under a contract could have misled the jury to the extent that the jury could have based its verdict upon a belief that the defendant had a contractual duty and was held thereunder to the strict duty to retrieve any and all timber which got into the water in any manner. Since we are of the opinion that the jury's verdict could possibly have been based on this theory under the charge rather than on negligence and proximate cause, the charge in these respects constitutes prejudicial error and defendant is entitled to a new trial.

Defendant brings forward some 36 exceptions to the rulings of the court on the admission or exclusion of evidence. Since there must be a new trial, nothing will be gained by a discussion of these exceptions.

New trial.

CAMPBELL and BROCK, JJ., concur.